R. G. STEELE ET AL. v. B. RENN ET AL.

1. BONA-FIDE PURCHASER UNDER A FORGED WILL. — A purchaser in good faith of land from a legatee, under a will duly admitted to probate, is not affected by proceedings subsequently instituted and resulting in annulling the will as a forgery.

2. SAME—FORGED WILL DIFFERS FROM FORGED DEED.—To the proceedings admitting the will to probate all are parties to the extent that they must take notice and are bound by it until set aside. Hence a holder under a forged will duly probated differs from a holder under a forged deed, and may hold unaffected by the subsequent attacks upon the validity of the will.

APPEAL from Cherokee.   Tried below before the Hon. R. S. Walker.

The case is stated in the opinion.

*Bonner, Priest & Priest*, for appellants.—This was a suit by the heirs of Casper Renn against Lucy Steele, wife of R. G. Steele, and John C. Carter for certain lots in Rusk occupied by defendants, said defendants claiming the same under deed to R. G. Steele from H. K. Joice and wife.

Plaintiffs claim that this property belonged to Casper Renn at his death, about the 24th of December, 1864, and now belongs to plaintiffs, as the heirs of Casper Renn.

Defendants claim that R. G. Steele, under whom they claim, acquired the property from H. K. Joice and wife by purchase, and that his title is good, he having been an innocent purchaser for a valuable consideration, paid without notice of any defect in the title or adverse claim to the property.   This is the issue in this cause.

The facts show that Casper Renn made a will just before his death, in December, 1864, which will was duly probated in January, 1865, and it stood as the probated will of Renn, uncontested for nearly two years, till the fall of 1866.   By the terms of this will the lots now in dispute were devised to H. K. Joice and wife, and by them sold and conveyed to R. G. Steele, long before any contest of said will or notice thereof, for a valuable consideration; and the main question in this cause is this: Is Steele's title protected, he having been an innocent purchaser for value without notice ?   We think so, and respectfully refer to the following authorities: Kerr on Fraud and Mis., pp. 312–318; 2 Sugd. on Vend., 507, 508, 513, 515,

516, 533; 1 Story's Eq., 381, 385, 386, 387, 399–410; 1 Jarman on Wills, note on top of page 23.

The facts show that B. Renn, one of the heirs, acting for himself and said other heirs, was in Rusk in August, 1865, and there remained, standing still until long after Steele purchased, without asserting his claim, and the law will not allow him now to assert it to the prejudice of defendants claiming under Steele's title. As he was silent when he should have spoken, he is not permitted by law to speak now, to the prejudice of defendants having a superior equity. (2 Sugd., 515, 516, and notes, and 121, 533, 534.)

The court below in his charge held that the authorities for the protection of innocent purchasers for value without notice have no application in this cause; an exception without authority of law, and consequently erroneous. Therefore it is respectfully submitted that the charges and rulings of his honor on the trial below demand a reversal of the judgment.

Here was a judgment of a competent court probating and recording the will in January, 1865; no appeal and no proceedings to contest the will till November, 1866; a stranger in the country, R. G. Steele, in the face of this judgment and relying thereon, buys the lots in dispute and pays for them. If he is not entitled to protection, who is? By what rule of metaphysics is he placed without the pale of protection in his rights that apply to all purchasers in good faith for value without notice?

The action of the District Court of Anderson county annulling the will and probate could not prejudice these defendants, not being parties nor privies thereto, nor could such proceedings impair vested rights. (9 Tex., 25; 13 Tex., 267, 268; 16 Tex., 413; 1 Will. on Exec., 240, 241, 251, and notes, and 488, 490, 492, 494.)

That R. G. Steele was an innocent purchaser in good faith and for a valuable consideration, paid without notice, there can be no question.

*Whitaker & Robertson*, also for appellants.—Is an innocent purchaser without notice, under a forged will, protected in his purchase, the same having been made after probate of the will and before suit instituted to set it aside?

What is the effect of a probate as long as it stands unrevoked?

It is a principle of law so well settled that authority is not needed to sustain it, nor can it be controverted, that the acts of a court of competent jurisdiction have binding effect upon the whole world as long as they stand, and until they are vacated by a direct proceeding instituted for that purpose. In the present case it cannot be denied that the court of probate was exercising its lawful jurisdiction, the will presented for probate, although forged, being that of a deceased person, over which the court could have jurisdiction. (See authorities in Paschal's Dig., note 463.)

Now, taking it for granted that the Probate Court of Cherokee county had jurisdiction in the matter, and that the will was duly probated, then we advance the proposition that the acts of a party deriving his authority from the judgment of a court of competent jurisdiction are valid and binding, and that the law will protect a person in all rights acquired or deeds done, in dealing with such party, under the sanction of a court of competent authority or in acting in accordance therewith.

This principle controls the whole question here discussed, and to state it distinctly, in the language of a very eminent American law writer, it is this: "That when the law requires or sanctions a thing to be done, it also protects the doer in the doing. This is but the branch of that great truth upon which all true government is based, that protection to the subject is commensurate with his duty to the government. It is one of those fundamental things which God wove at the creation in the frame-work upon which human society was by him placed." (Bishop's First Book of the Law, sec. 99.)

The application of this reasoning to the present case is that the appellants acted in a case where their information was

derived from the lawful act of a competent authority, which they could not dispute or deny, and therefore their action in dealing with the executors or those holding under them was in deference to the judicial act probating the will of Casper Renn and in conformity with the terms of the probate and will.

It is true that the appellants in this case did not deal directly with the executors of the will of Casper Renn; but, what is the same, they dealt with those holding in privity with them, according to the terms of the will; and for the reason that they are further removed from the perpetrators of the forgery, the will still standing unrevoked, they would less probably be affected with notice, which would make it reasonable that the equity would be stronger in their behalf. However, the discussion of the principles of law laid down will be as applicable to them as to an original purchaser or devisee under the will.

In support of this proposition, we invite the attention of the court to two cases, both very similar to the present, and both holding different views of the same question, yet the latter overruling the former and pointing out its errors. First case: "In the year 1706 there was decided in England a case wherein an executor of a will sued a man for a sum of money due the deceased in his lifetime. This defendant pleaded to the suit that he had already made payment to another executor, authorized, as this one was, by the Ecclesiastical Court. The fact appeared that the executor to whom payment was made set up a forged will allowed in the Ecclesiastical Court; then he had taken the money from the defendant; then the Ecclesiastical Court had annulled the probate of this will and had admitted to probate the true will, of which the plaintiff was executor, named therein as such by the testator. Upon these facts the court decided that the defendant was under legal obligation to pay the money a second time, not being permitted to avail himself of the payment made to the executor under the forged will." (See Bishop's First Book of the Law, sec. 102.)

Second case: "In 1789, when the above decision had stood eighty-three years in the English books as apparently the unquestioned law, the same question came up again, and the court decided it the other way, and expressly overruled the above case as not being in fact, what it was in appearance, the law of England." (Anonymous, 1 Comyn's, 150.)

In Allen *v.* Dundas, 3 T. R., (Durnf. & E.,) 125—and to the same effect see 15 S. & R., 39, appeal of Pebles—the chief justice, in giving the judgment of the court, starts with a basis for the structure of his opinion which is clearly erroneous, and so shown in the latter case. It is this, quoting from the opinion: "An executor derives all his authority from the testator himself, and he of himself, as being executor, without anything more, has the power of disposing of the estate for the testator, &c.;   *   *   *   for the probate of the will gives no authority at all to him, (the executor,) and, therefore, if he is not the rightful executor he takes no authority at all; and it would be unreasonable that a person who has not authority should dispose of the interest of another."

Now, this is the exact position taken by the judge in the court below in his charge to the jury, and relied upon by the appellees, and constitutes the basis of the verdict of the jury and the judgment of the court thereon. It is true, we admit, that no estate passes under a forged instrument, such as a forged deed or will, not probated; (see Kerr on Fraud and Mistake, p. 51;) but the position we assume is, that the estate passes not under the will, but under the judicial act probating it. Now, the above reasoning in the first case may, slightly considered, seem very plausible and the decision well sustained; but its error was pointed out by a course of legal reasoning, or rather statement of legal principles, by the last case, which set forth the true law, that the authority of an executor is not derived from the will itself, but from the judicial act probating the will, and that rights of parties acquired under said probate, while in force, will be protected.

The first proposition seems reasonable, in this: that the testator names the executor; but this only puts him in a position in which he may acquire the authority to execute the will, and this authority is wanting until the probate of the will, when the executor takes his authority from the judicial act of the court enforcing the law. And whether the authority is derived from the probate of a valid or a forged will, it is all the same while the probate stands unrevoked, with this difference only, that one may be called an executor *de jure* and the other an executor *de facto*.

We contend that the acts done in accordance with the probate of the will by a *de-facto* executor are good and valid, and the rights of parties acquired in dealing with this executor are entitled to protection, for the executor is in the immediate and open execution of his office, and the parties, as in the present case, neither knew nor could tell whether the executors named in the forged will were rightful executors or not, except in so far as they were informed by the probate, which they could not dispute. (Kane *v.* Paul, 14 Pet., 33.)

We have seen fit to comment on these two cases to show the principles of law governing in the present case, assuming that authority consists not of cases, but of principles. But as evidence of the principles, we would farther invite the attention of the court especially to the case of Jones *v.* Powles, 10 Eng. Ch. Rep., 310, very similar in facts to the case in hand, and in law sustaining the positions we have assumed in this argument.

The case of Bassett *v.* Nosworthy, 2 Lead. Cas. in Eq., 5, is in point, the facts showing the party was a purchaser under a revoked will, without notice of the revocation, upon which the court determined that a *bona-fide* purchaser upon an apparent title is entitled to protection under that title. (Love *v.* Berry, 22 Tex., 371.)

It is evident that the present case is very similar to one where rights under a sale on execution have been acquired, and afterwards the judgment under which the sale was made

has been found to be erroneous; yet our Supreme Court has often decided that such rights should be protected, and that such sales vested a good title in the purchaser, as against the defendant in execution. (Mosely *v.* Gainer, 10 Tex., 393; Hancock *v.* Metz, 15 Tex., 205; Castro *v.* Illies, 22 Tex., 479; Stroud *v.* Casey, 25 Tex., 754; Alexander *v.* Maverick, 18 Tex., 196; Burdett *v.* Silsbee, 15 Tex., 615; Poor *v.* Boyce, 12 Tex., 449.)

With respect to the argument of inconvenience and equity in favor of the real heirs of Casper Renn, we would simply say that reason seems to support us in the position that the inconvenience and equity would be all on the other side, in favor of these appellants, who have been guilty of no neglect, and are *bona-fide* purchasers in possession with the legal title; and such parties find peculiar favor in the eyes of the law. But the equities being equal, then the well-known maxim will apply, that where the equities are equal the law will prevail. But under this head there is another consideration of considerable force, which is, that the appellees in this case are not without remedy, as they are legally entitled to recover the proceeds of the sale of the property from the parties guilty of the fraud or forgery. We would here again call the attention of the court to the case of Bassett *v.* Nosworthy, above referred to, as using language very strong in favor of *bona-fide* purchasers.

*E. W. Bush,* for appellees.

I. Parties whose rights are to be affected by a will have four years from probate to vindicate and redress themselves; consequently those claiming under such will hold and claim subject to the penalty of any informality or defect which the law permits to be shown in their title by suit brought within that time. In this case suit was brought in less than two years. (Hopkins *v.* Wright, 17 Tex., 30; Scoby *v.* Sweatt, 28 Tex., 728.)

II. The acts of an administrator or executor appointed by fraud are void. (Parker v. Parker, 10 Tex., 83.)

III. Appellants cite Kerr on Frauds, 312–318, inclusive, which we adopt as conclusive against them. The decree of the District Court of Anderson county, affirmed by this court, shows that the pretended will was not the act of C. Renn, deceased; and the authority cited by appellants (Kerr on Frauds, 315) announces that if an instrument which purports to convey a legal title or estate be a forged instrument, no title can be acquired under it. A man who takes under such an instrument has no title at all, and cannot claim as a purchaser without notice. (Case v. Jennings, 17 Tex., 675.)

(Mr. Bush also filed an argument upon the question at issue.)

*M. A. Long,* also for appellees.—Whether the action of the Probate Court in admitting the forged or bogus will of Casper Renn to probate and record prior to the sale of the land by Joice and wife and subsequent to the probate of the same in common form, can now be questioned by an original suit in the District Court, appears to me to be fully met and determined by our statute. It would seem to be quite plain that, in the absence of such a statute, the probate of the will would be conclusive, where the probate had been granted upon notice to all parties in interest, as a valid judgment, until reversed upon appeal to some tribunal having power to reverse the same. Different lengths of time are allowed in different States to appeal from the judgment of probate. For instance, in Mississippi, five years; in Ohio, two years, &c. In Pennsylvania and North Carolina the probate is only *prima facie* as to real estate. (2 Jarman on Wills, (Perkins' ed.,) 213, note 2.) It is true that both in England and in some of the States courts of equity have sometimes entertained bills to annul and set aside wills after probate in common form. These cases are probably all based upon purely equitable grounds; as, fraud, accident, or mistake in procuring

the judgment establishing the will. But a court of equity will never entertain a bill to set aside or reform a judgment for fraud which might have been pleaded and proved in the original suit. But cases appealed from the Probate Court to the District Court are tried *de novo*.

Our statute (Paschal's Dig., art. 1261) directs how application shall be made to the Probate Court to prove wills, and the notice to be given to all parties interested, &c. Article 1262 sets forth the evidence upon which wills may be admitted to probate, and expressly provides that "any person interested in any such will may, within four years after it is admitted to probate, institute suit in the District Court to contest its validity, &c.; * * * and provided also, that such will may be attacked for forgery or other fraud at the suit of any heir at law of the testator, or any other person interested in his estate, at any time within four years after discovery of such forgery or fraud; and infants, *femes-covert*, and persons *non compos mentis* shall have a like period after the removal of such disability."

More than twenty years ago this court decided that this statute is in the nature of an appeal from the Probate Court to the District Court, which, independent of its enlarged powers, has express authority to take cognizance of suits instituted to contest the validity of wills. (Parker *v.* Parker, 10 Tex., 83.) If, indeed, an appeal had been taken at the time of the granting of probate of the will, and the appeal had had the effect of superseding the execution of said judgment or the action of the executors named in said forged or bogus will, yet if an appeal by writ of error to the District Court had been prosecuted under the statute without such supersedeas, it is equally obvious that, upon the reversal of the judgment of the Probate Court, a writ of restitution would issue to place the property of the estate in the hands of the true owners. This is substantially the effect of the judgment which we now seek to affirm.

The mode of appeal provided by the plain words of the

statute is either law or it is not.   Not only has it been rec-
ognized as law as early as the year A. D. 1853, in the case
above cited, but this court has, since that time, frequently
recognized this statute as authorizing just such suits as that
now before the court.

In 1856, in the case of Hopkins *v.* Wright, the right of the
widow or heir is expressly recognized to contest a will within
four years from its probate under the provisions of this stat-
ute.   Also in 1866, this court, in the case of Scoby *v.* Sweatt,
sustains a suit in the District Court to annul and set aside
a will after probate in common form, brought within four
years after said probate.   In that case this court says: "The
law gives the parties whose rights are to be affected by the
will, four years from the probate to vindicate and redress
themselves; and, as a consequence, those who hold and claim
under such will hold and claim subject to the penalty of
any informality which the law permits to be shown in their
title by suit brought within that time."   (Hopkins *v.* Wright,
17 Tex., 30;  28 Tex., 728.)

This decision seems to meet the very point suggested by
the court for consideration.   The court having set aside the
bogus will as not the will of Casper Renn, and no other will
having been propounded or established, it follows as a con-
sequence that the lands of the intestate, including the lots of
land devised in the bogus will to Joice and wife, descended
directly to the heirs of C. Renn upon his death, as provided
by our statute.   (Paschal's Dig., art. 1373.)   As this bogus
will was no will, the land in question was not devised to
Joice and wife; and it follows as a consequence, in the lan-
guage of Justice Moore, above quoted, that those (Joice
and wife) who claim under such will hold and claim sub-
ject to the right of the heirs to have the bogus will set aside
and utterly annulled as a forgery in substance.

This being law, how can it be possible that the devisees
(Joice and wife) could acquire any title to the land in con-
troversy; and having no title, how could they convey to

Steele what they had not? It is a logical impossibility. If all the legatees under the bogus will had pretended to sell, as did Joice and wife, before the institution of suit by the heirs, and should be held to have thereby acquired title, would not the statute in question be utterly defeated in its object? (1 Jarman on Wills, 215, 216, Perkins' notes.)

The verdict and judgment having given the appellant the full benefit of his improvements as if made in good faith, and thereby nearly paid the rents for two years, no rents being allowed by the court for the first seven years the place was occupied by appellants, it would seem they have no cause to complain.

The suggestion that it was perhaps the duty of the heirs to have made appellants parties to the suit to set aside and annul the pretended will, and that having failed to do so the judgment of the District Court annulling the will may not be operative as to them, is believed to be unfounded in reason and law. (2 How., (Miss.,) 148; 8 Yerg., 186.) The statute authorizing the heirs to have the will set aside and annulled in the District Court at any time within four years from the date of the probate of the same, has no such requirement; and this court, as we have seen, having decided that one who holds or claims under such will only holds and claims subject to the contingency of the will being annulled, it would seem to follow that to make such holder a party would be unnecessary, if not improper.

Appellants' title was at best a conditional title, subject to be defeated by the annulling of the will; just as purchasers under tax sales, where subsequent redemptions are allowed, have only conditional titles, which, upon redemption within the time limited by law, are, *ipso facto,* "gone forever." (Black. on Tax Titles, p. 490.)

And it may be remarked that the statute under which this will was contested does not authorize a suit to recover property in other hands. The statute only authorizes the suit to annul the bogus will, and to have joined the appellants

claiming under the bogus will would have been unauthor-
ized. This view seems to accord with legal principle and
with sound reason, and there seems to be no contrary au-
thority.

MOORE, CHIEF JUSTICE.—This is an action of trespass to
try title, brought by appellees December 12, 1872, for the
recovery from appellants of lots three and four in block
twenty-three, in the town of Rusk, Cherokee county, to
which both parties claim title under Casper Renn, deceased,
in whom the title is admitted to have been at his death.
Appellees claim as the heirs, and appellants as purchasers in
good faith from H. K. Joice and wife, who claimed as devi-
sees of Renn.

On the 23d of December, 1864, Casper Renn died in Rusk,
Cherokee county, where he had for some years previous re-
sided. In January, 1865, an instrument purporting to be
his last will and testament was presented to the court for
probate by the parties therein named as executors; said in-
strument authorized said executors to administer and settle
up the estate in accordance with its terms without being
subject to the supervision and control of the court. After
due notice of the application had been given, the execution
of the instrument was inquired of by the court, whereupon
it was adjudged to be the last will and testament of said
Casper Renn, deceased; and the property and effects belong-
ing to his estate were committed to said parties named as
executors, to be by them administered under and in pursu-
ance of the authority purported to be given them therein.

On the 3d of March, 1865, said executors made and deliv-
ered to said Joice and wife a deed for said lots devised to
them by said will; and on the 2d of December, 1865, said
Joice and wife, in consideration of $275 paid them by Rich-
ard G. Steele, as recited in their deed, sold and conveyed them
to said Steele, from whom they were subsequently purchased
by appellant Carter.

Appellees, who are brothers and sister to Casper Renn, deceased, were at the date of his death, and most of them seem to be still, citizens of Germany: Some time in the summer of 1865 B. Renn, one of the appellees, came to Rusk, Cherokee county, where he has since resided, to look after the estate of his brother on behalf of his brothers and sister as well as himself; and in November, 1866, prior to the sale of the lots from Steele to Carter, suit was instituted by said B. Renn in the name of the brothers and sister, heirs of said Casper Renn, deceased, to set aside and revoke the probate of said will, charging the same to be a false and spurious instrument, and not in fact the will of said Casper Renn, deceased. In 1873 it was finally so determined and adjudged by this court, and its probate ordered to be revoked and annulled.

On the trial, the facts here stated having been proved, appellants introduced evidence tending to prove that they purchased the lots in good faith, and claimed to be entitled to the protection of the court as purchasers for value without notice that said instrument was not the true and genuine will of Casper Renn, deceased, as it purported and had been adjudged to be by its probate; whereupon the court instructed the jury, among other things, as follows: "The plaintiffs have produced in evidence a conclusive judgment setting aside the pretended will of Casper Renn; deceased, and declaring it null and void, and that his heirs at his death were invested with the ownership of all of his estate. When Steele purchased from Joice he took no better title than Joice had, which has been shown to be none at all, and he took the title at his own risk."

If this is a correct view of the law, evidently appellants have no title and have no just cause to complain of the recovery of the lots by appellees. On the other hand, if it is erroneous, as it necessarily controlled the verdict of the jury to the prejudice of appellants, the judgment must be reversed.

The practical importance of the question raised by this

charge is obvious. If the views of the court are held to be correct, no title derived from a devisee but may be swept from under the purchaser at any time, however remote, while the probate of the will is subject to attack. This fact when known must cast a cloud on all such titles, lessen their market value, and retard their transfer. On the other hand, if the instruction does not correctly state the law, our probate system affords but slight safeguards to non-resident heirs against perjury and fraud. These considerations induced this court to refrain from a decision of this case for several terms, and to call upon the counsel for a more thorough examination of the law applicable to it than had at first been made by them; but we regret to say that so far they have cited us no case bearing directly upon the point presented, and we have, to a considerable extent, to decide it as an original question.

Appellants insist that they are entitled to protection as innocent purchasers notwithstanding the invalidity of the will from which their title springs. In support of their proposition they refer us to the case of Jones v. Powles, 10 Eng. Ch. Rep., 310; 3 Myl. & K., 581. But this case merely illustrates the rule of equity protecting purchasers in good faith who get in the outstanding legal title, but leaves unsettled the main difficulty, viz.: Although he may have purchased in good faith, did Steele occupy a better position than Joice and wife would if they had not sold the lots? Unquestionably their title in such event would have fallen with the revocation of the probate of the instrument by which they purport to have been devised to them. (Gaines v. New Orleans, 6 Wall., 642; Gaines v. De La Croix, 6 Wall., 719.) But while our conclusion has not been reached without hesitancy and embarrassment, we think, notwithstanding the damage to which absent and non-resident heirs may thereby be exposed, he does, if he in fact purchased in good faith, and that public policy requires this solution of the question.

An application for the probate of a will is a proceeding *in rem.*, and the judgment of the court upon it is binding upon

all the world until revoked or set aside. (Hodges v. Bauchman, 8 Yerg., 186; Scott v. Calvit, 3 How., (Miss.,) 158; State of California v. McGlynn, 20 Cal., 271; 3 Red. on Wills, 63.)

Now, it has often been held that acts done under authority, by the judgment of a court having jurisdiction of the estate, even where it is being administered under a forged will, are just as valid and effectual as if the will had been genuine; that a payment voluntarily made to the executor named in a forged will is a valid discharge of the debt. Though the will may be afterwards set aside and annulled, the debtor cannot be required to pay the debt a second time.

If the pretended will had required the executors to settle the will of Renn in the Probate Court, the acts done by them in pursuance of the orders of the court carrying into effect provisions of the will could not be impeached or set aside to the injury of innocent parties, because they have a right to rely upon the validity of the judgment of the court. (5 Monr., 42; 11 Cush., 519; 9 Dana, 41; 9 Penn. St., 234; 6 Port., 243; 13 Gratt., 682.)

Is there any difference in respect to the powers of the executors where the purported will directs the settlement of the estate out of the court? By its judgment the court has declared the instrument to be genuine. This judgment is binding upon all the world until reversed or annulled. Must innocent parties, when they act upon the faith of such judgment, do so at the peril of its being subsequently shown to be erroneous? There is evidently a broad distinction in the position of a party claiming to be an innocent purchaser from one who has merely a forged deed, and that of a like purchaser from the devisee in a forged will. In the former case the true owner is neither charged with notice of the forged deed, nor is he in any way committed to or estopped from denying its validity; while in the latter the will is adjudged to be valid by a court of competent jurisdiction, in a proceeding to which the heir is a party. While it is in force the heirs are bound by it, and cannot deny its correctness or dispute the validity

of the devise.   The purchaser from the devisee is authorized by the judgment to buy from him on the faith of a valid judgment of a court of competent jurisdiction, to which the heirs are parties, by which it has been in effect determined that the estate of the testator vested in the vendor on the testator's death.   The heirs being bound by the judgment, they occupy the position of one who has voluntarily parted with or been divested of his title, and then stands by and sees it sold to a purchaser in good faith without a word of complaint.   That he afterwards asserts his title and has the judgment reversed, or gets a decree cancelling the probate of the will, does not mend the matter.   The purchase has been consummated.   If by the subsequent reversal of the judgment he can annul the purchaser's title, he makes an innocent party the victim of his negligence and delay, and all distinction between *bona-fide* and *mala-fide* purchasers is destroyed.

For the error in the charge of the court, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Justice BONNER did not sit in this case.]