**GARDNER et al. v. UNION BANK & TRUST CO. et al.**

No. 14325.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 30, 1942.

Rehearing Denied March 13, 1942.

Frank Taylor, of Fort Worth, for appellants W. Scott and Helen Gardner.

John S. Morris, of Fort Worth, for appellants Mary Jane, Helen and June Simmons.

H. C. Ray, of Fort Worth, for appellant Charles Hodges.

Samuels, Foster, Brown & McGee, of Fort Worth, for appellee Union Bank & Trust Co.

G. L. Robertson, of Fort Worth, for appellees W. W. Dickinson et al.

Lightfoot, Robertson & Gano, of Fort Worth, for appellee Jo S. Hubbard.

James R. O'Daniel, of Fort Worth, for appellee Sloan Lumber Co.

Morgan Bryan, of Fort Worth, pro se.

SPEER, Justice.

Plaintiff Union Bank & Trust Company, a State banking corporation, hereinafter called Bank, instituted this suit against W. Scott Gardner and his wife, Helen Gardner, to recover judgment on a note in the principal sum of $15,716.10, with interest and attorney's fees, less certain admitted credits, and to foreclose a deed of trust lien on twenty-six described tracts of land in the City of Fort Worth, Texas. Allegations were made of the execution by the Gardners of the note and the deed of trust, and that the debt was due.

Several other persons were named by plaintiff as defendants, under allegations that they were asserting some kind of interest in the lands upon which it sought a foreclosure. Other parties intervened in the suit, seeking to have their claims established with liens on certain parts of the land to secure their respective debts, alleging that they were first and prior liens to those of the Bank. Insofar as this appeal is concerned, we do not consider it necessary to go into the details of the various claims and rights adjusted by the court other than the controversies between the Bank and those who have appealed. The judgment of the court covers twenty-two pages of the transcript, but the greater part of it is unimportant to a discussion of the points before us.

Back of the controversy involved here, some of the pertinent undisputed facts are: That all of the property involved belonged to Mrs. Gertrude Emery Wilson prior to her death on April 10th, 1935. When Mrs. Wilson died, she left surviving her only two daughters, Mrs. Helen Gardner and Mrs. Emma Simmons. On May 28th, 1935, Mrs. Gardner and Mrs. Simmons were, by order of the Probate Court, in Cause No. 12423, appointed temporary administratrices of the estate; they served in that capacity until they were succeeded by First National Bank of Fort Worth. On November 22nd, 1935, Mrs. Emma Simmons, for herself and in behalf of her four children, applied to the County Court for the probate of a will of Mrs. Gertrude Emery Wilson. This action bore docket number 12603. By the terms of the proposed will, among other things, it devised certain remainder interests to the minor children of both Mrs. Simmons and Mrs. Gardner. Guardians ad litem were appointed by the court to represent

those interests. Mrs. Gardner, the sister of proponent, contested the probate of the will; on May 8th, 1936, judgment was entered denying the probate. No appeal was perfected from that judgment.

On October 11th, 1937, an order was entered in cause No. 12423 (the administration proceeding) appointing T. Oscar Vogel permanent administrator of the estate of Mrs. Gertrude Emery Wilson, deceased; the order recites a necessity for permanent administration and that Vogel was appointed pursuant to an appearance and renouncement of prior rights thereto by Mrs. Gardner and Mrs. Simmons. The estate of Mrs. Wilson owed many debts to various persons. Claims were filed with the administrator Vogel allowed and classified by the court, which, along with unpaid taxes, aggregated nearly $12,000. Mrs. Simmons owed the Bank something over $4,000 on a judgment, secured by whatever interest she had in her mother's estate. The Gardners assumed the payment of that judgment to the Bank. The administrator made application to the court for an order to sell the property of the estate in his hands to pay the debts. All requisite and pertinent facts appear to have been disclosed and the court ordered the property sold at private sale for payment of the established debts. Sale was made by the administrator, under orders of the court, to Mrs. Gardner. She and her husband borrowed the money from the Bank to pay the purchase price. They executed their note for $15,716.10, and simultaneously executed their deed of trust lien on the property so purchased to secure payment to the Bank. By mutual agreement between the parties, the Bank disbursed the funds in checks payable jointly to the administrator, the claimant of each debt and to the Gardners. When payments were all made, the aggregate amounts lacked approximately $235 being as much as the note and credit was given on the note for that amount. As payments were made to claimants the Bank took assignments from each for their claims against the estate of Gertrude Emery Wilson, deceased. For reasons shown in the record, about which no point is made, the administrator executed four deeds to Mrs. Gardner, two of them dated March 1st, 1938, one on July 5th, 1938, and another on August 10th, 1938. All applications for sale, reports and orders of the court in each instance appear regular as provided by the statutes. There are recitations in the deeds of the dates of the application for sale, reports and all orders thereon prior to the dates of the deeds.

On August 8th, 1938, the 67th District Court in Tarrant County issued its writ of certiorari in cause No. 12603, pending in Probate Court of said county, for the purpose of reviewing proceedings had on May 8th, 1936, when the said Probate Court refused to probate the will of Mrs. Gertrude Emery Wilson. On a hearing de novo the District Court denied probate of the will; the Court of Civil Appeals affirmed the judgment of the District Court, writ of error was granted by the Supreme Court, and thereafter error was confessed by defendants in error and a joint request was made to the Supreme Court for a reversal of the case to the District Court. It was accordingly reversed, and on February 18th, 1941, the District Court admitted the will of Gertrude Emery Wilson to probate and certified the order to the county court for observance.

The will provides for payment of debts, creates a trust in a certain percentage of the proceeds arising from the estate for Mrs. Gardner and Mrs. Simmons, with remainders to Charles G. Hodges, a son of Mrs. Gardner, and to Carolee, Mary Jane, Helen and June Simmons, the children of Mrs. Emma Simmons.

The note sued on and the lien sought to be foreclosed are those executed by W. Scott Gardner and wife, Helen Gardner, to the Bank on June 25th, 1938, when Vogel, the administrator, sold the property to Mrs. Gardner.

All defendants filed a plea in abatement as against the Bank's suit; the plea was based upon an allegation that all orders of the Probate Court appointing the permanent administrator, order to sell the property and all acts of the administrator, especially those purporting to sell the property to Mrs. Helen Gardner, were void. An alternative plea was urged substantially, that if the plea in abatement should be overruled, then the court should continue the present case until such time as the Probate Court could administer the estate of Mrs. Wilson, deceased, under the provisions of her will, which had been admitted to probate.

The case was tried to the court. The pleas in abatement and the motion to continue the case until the estate could be

administered under the will were overruled. When these rulings were made, counsel for the Gardners and Charles G. Hodges, with permission of the court, withdrew from the court room and did not further participate in the trial. The court heard all testimony and rendered judgment for the Bank on its note with a foreclosure of the lien as against all defendants and interveners, except in the instances in which equities were adjusted between the parties as to priority of liens. There is no complaint here as to the matters thus determined. W. Scott Gardner, his wife, Helen Gardner, Charles G. Hodges, Mary Jane Simmons, Helen Simmons, and June Simmons have perfected this appeal.

Appellants base their appeal upon points involving, (1) error of the trial court in overruling their pleas in abatement, (2) the district court was without jurisdiction to determine the validity of the deed of trust lien sought to be foreclosed by the Bank, and (3) error of the court in refusing to continue this case until the probate court could hear and make orders under the will to executors or administrators thereunder with will annexed.

Appellants, who filed separate briefs, do not agree in all respects; the Gardners seem to concede that the trial court, in this collateral attack, could not review orders made by the Probate Court in the administration proceedings, wherein Vogel received his appointment and subsequent orders resulting in the sale of the lands to Mrs. Gardner for payment of the debts owing by the estate of Mrs. Wilson. While upon the other hand counsel for Hodges and the Simmons children assert that all those orders were absolutely void and that the court could and should ignore them as such.

■ It is unnecessary to cite authorities in support of the well settled rules, (1) that the Probate Court of a county in which deceased's property is situated, in cases like this, has potential, and in some respects exclusive, jurisdiction in matters pertaining to the estate, and (2) that all orders, judgments and decrees made by it, authorized by statute, when regular in form, are in rem and binding on everybody everywhere, until set aside by the court making them. It may also be safely said that, except in instances not involved here, heirs and devisees take subject to the valid claims of creditors of the ancestor or testator.

■ The plea in abatement was properly overruled. As above indicated, this suit was upon a note secured by liens executed by the Gardners for money borrowed from the Bank with which to pay the purchase price for the property when sold by the administrator, Vogel. Unless the administration proceedings were void, they could not be attacked in a trial of the instant case. Under our system of handling estates of decedents, county courts sitting for probate purposes have potential jurisdiction of all matters pertaining thereto. When there are debts owing by a decedent, administration is a necessary vehicle through the whole procedure, when there is no will directing that it be handled otherwise. Some of those claiming an interest in the estate of Mrs. Wilson proposed the probate of her alleged will. Mrs. Gardner, a daughter, contested it upon the ground that the purported will had been revoked. That being a proceeding in rem, all the parties interested were bound by the outcome of the trial. The contest was sustained and probate was denied. No appeal from that judgment was perfected as provided by Article 3699, R.C.S.

■ Thereafter, Mrs. Gardner and Mrs. Simmons, the two daughters of the deceased Mrs. Wilson, appeared at a hearing in cause No. 12423 and renounced their rights to administration and the court at that hearing determined that administration was necessary and appointed Mr. Vogel administrator of the estate. The record reveals that he administered the estate, under proper orders of the court, in all matters appertaining to it. Many debts were established and allowed by the court. Necessity was shown for the sale of the property to pay those debts. All orders, applications and decrees are regular in form; in fact, none of the appealing parties claims otherwise. At no time did the administrator do a thing under orders of the court that the law does not authorize. In such circumstances those proceedings cannot be collaterally attacked, as was attempted by some of the appellants in this case. This has been the established law in this state for many years. Withers v. Patterson, 27 Tex. 491, 86 Am.Dec. 643, and an unbroken line of decisions since the rule was there announced.

The defendant Hodges urgently insists that the acts of the administrator were void because the judgment denying probate of

the will was not final, in that the right of review by certiorari continued to exist for a period of two years after its rendition. It is argued that in fact the writ of certiorari was issued within the statutory period of time, and that when, at the end of the litigation following, the will was probated, it superseded the administration proceedings. It will be noted that the administration proceedings were all had, the sale of the property and deeds therefor all took place between the date on which the purported will was rejected for probate and the issuance of the writ of certiorari.

We have been cited to no case precisely in point, nor have we found such. With the thought in mind that courts will endeavor to discover what is right and equitable between parties under a given state of facts, and then proceed to apply the applicable law to those facts, we have concluded that in this case both the law and facts are with the plaintiff Bank.

Persuasive of the principle we have in mind, it is provided by Article 3364, R.C.S., that when administration has been taken out in an estate and the administrator had administered the estate under orders of the court, and a will is subsequently discovered and probated, by the terms of which the estate is to be administered in a specified way, all acts done by the previously appointed administrator are valid, the same as if no will had been found.

In the early case of Steele v. Renn, 50 Tex. 467, 32 Am.Rep. 605, a will was admitted to probate and the executor, under orders of the court, sold the real estate for payment of debts, and after the sale and deed was made, a writ of certiorari was issued and the district court found that the will was a forgery, yet the sale by the executor under the former judgment was upheld.

In Glover v. Coit, 36 Tex.Civ.App. 104, 81 S.W. 136, a similar situation to that in the last cited case arose. It was said, at page 140 of 81 S.W. "At the time they [Scott and Jones] purchased, the will had been admitted to probate and its validity established by the judgment of the county court. * * * and such judgment was conclusive thereof so long as it remained in force." It was further held that subsequent proceedings in the district court on writ of certiorari did not affect the validity of the title acquired under the previous orders. In the instant case there had been a judgment denying probate of a purported will from which no appeal was perfected. Of necessity the estate should be administered and the only means by which it could be done was by an administrator; this was done and the property sold for payment of debts, all at a time when the judgment denying probate of a will was in full force and effect. Subsequently the writ of certiorari issued and nearly three years later the will was probated. Similar in many respects to the holding in the Glover v. Coit case, supra, are the principles announced in Eubanks v. Jackson, Tex.Civ.App., 280 S.W. 243, writ of error refused; Davis v. Gaines, 104 U.S. 386, 26 L.Ed. 757 (construing a Louisiana code); notes under Newbern v. Leigh, 26 A.L.R. 270, call attention to apparent conflicts from different jurisdictions, but quote at length from Glover v. Coit, supra, as being the rule in Texas.

We hold that Mrs. Gardner acquired good title to the property purchased by her from the administrator. She had a right to rely upon the effective judgment of the court declaring that there was no valid will; and thereafter upon the several orders of the Probate Court, appointing the administrator and the judgments ordering sale of the property for payment of the debts. We are supported in this conclusion by the provisions of Article 3323, R.C.S., where it is provided that a duly qualified executor under a will may under proper orders sell the property of the estate for payment of the debts, and that such sales to innocent purchasers for value will be valid although the authority under which sales were so made may be subsequently set aside.

Under our system of administering estates of deceased persons, the whole scheme could be defeated if creditors were required to wait for payment of their debts until every possible contingency had been eliminated. By Article 3325, R.C.S., Vernon's Ann.Civ.St. Art. 3325, application for probate of a written will may be filed any time within four years from the death of the decedent. And for good cause shown may be probated even at a later date. Art. 3326. After probate, any interested party may prosecute his action to set it aside at any time within four years. Art. 5534. In some instances a written will, even though proposed for probate, may or may not be effective for a period of twenty-one years, after the death of the testator. Art. 8293. In many of such instances claims

of creditors would be barred by limitation long before the machinery of our courts could begin to function; a claim creditor would have no remedy. To give such a construction to our probate laws is contrary to our policy of jurisprudence. We believe there is every good reason to give effect to a regular, adequate and orderly administration of the estates of deceased persons, in keeping with statutory requirements.

It is contended by some of the appellants that Mrs. Gardner (also an appellant) was not an innocent purchaser of the property for value, when the deed was made to her by the administrator; and that the Bank was not an innocent lien holder under Mrs. Gardner, for, it is argued that they both knew of the existence of Mrs. Wilson's will and its provisions for the manner of administering her estate. Conceding that Mrs. Gardner and the officers of the Bank knew these facts, yet it was at the instance of an appellant, Mrs. Gardner, that the will had been adjudicated invalid. It is obvious that they also knew that a court of competent jurisdiction had entered a judgment denying its probate, that no appeal had been taken from that judgment and that time had expired in which one could be taken. They had a right to rely upon that judgment and the subsequent appointment of an administrator and his acts under authorized orders of the court. It is difficult to see how they could fraudulently and culpably do a thing they had a legal right to do. Here we find Mrs. Gardner and her husband joining other appellants in an effort to show their acts were void.

The effect of appellants' contention is that they are entitled to have all of the administration proceedings set aside in a collateral attack on all those orders and decrees after the Bank has paid out its money at the Gardners' request on the debts. There is no contention that the property was not sold for its value by the administrator.

For the reasons shown we overrule all the contentions urged under the points that the court erred in overruling the plea in abatement and in refusing to continue the case until the estate could be administered under the will.

Defendant Hodges filed a forceful brief, arguments and authorities based upon two inquiries, designated as points relied upon. They are in effect: (1) Can a life tenant encumber or alienate an estate so as to defeat a remainderman's rightful inheritance? And (2) Does the district court (as in this case) have jurisdiction to foreclose a lien on property of an estate, when there is pending in the Probate Court an application to probate a will in the same estate?

We think these inquiries are beside the question before us. An answer to both would not solve the controlling questions here. If there were no other questions involved than those propounded we could safely answer them both in the negative. But because of what we have already said, we think the inquiries ignore the genesis of this law suit. It is true that Mrs. Gardner, who joined her husband in the deed of trust lien to the Bank, was one of the life tenants under the will, and her son, Charles G. Hodges, was one of the remaindermen, but as we construe the transactions had, all beneficiaries under the will, including the remaindermen, lost their interest in the property when the administrator sold it to pay the debts. Let us suppose the sale had been to a stranger, and not to Mrs. Gardner; could it be said that the remaindermen's interest would have been different? We think not. When Mrs. Gardner became the purchaser from the administrator she acquired a title entirely different from the interest she previously had as a life tenant under the will. When she subsequently mortgaged the property to the Bank she encumbered it as thus acquired from the administrator, and not as a life tenant; hence there was no detriment to the interests of remaindermen.

Appellants, the Simmons heirs, urge, in addition to matters already discussed, that there was no consideration for the conveyance by the administrator to Mrs. Gardner, and that since the Bank took assignments of the claims from the creditors of Mrs. Wilson, it acquired no rights from the Gardners when it took a lien on the property to secure its note. The life and vitality of the deed of trust lien is dependent upon the title acquired by Mrs. Gardner from the administrator, and there was no plea by any appellant that the consideration had failed either in whole or in part. If we felt impelled to discuss these points at length we would not hesitate to say that unquestionably there was a valuable consideration received by the administrator for the estate when he made the conveyance and the estate got the full benefit of it.

The record in this case is such that if we should fully discuss all questions raised and analyze the authorities relied upon, this opinion would be of an unreasonable length. Suffice it to say that we have considered all matters presented and see no reason why the judgment of the trial court should not be upheld. It is therefore affirmed.