### GARDNER et ux. v. UNION BANK & TRUST CO. OF FORT WORTH.

No. 14584.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 26, 1943.

Rehearing Denied Jan. 7, 1944.

Jack Carter and Clyde C. Thomas, both of Fort Worth, for appellants.

Samuels, Brown, Herman & Brown, of Fort Worth, for appellee.

SPEER, Justice.

This is an appeal from the confirmation of a sale of real and personal property by a receiver. The subject matter of this suit is no stranger to this court. Certain phases of the unfortunate controversy have been before us previously, as reported in Simmons et al. v. Gardner et al., Tex.Civ.App., 134 S.W.2d 338, Gardner et al. v. Union Bank & Trust Co., Tex.Civ.App., 159 S.W. 2d 932, and Union Bank & Trust Co. v. Smith et al., Tex.Civ.App., 166 S.W.2d 928.

Present appellee, Union Bank & Trust Co., sued W. Scott Gardner and wife for debt and a foreclosure of a deed of trust lien on several pieces of property and certain personal property consisting of furnishings in some of the houses situated on the real estate. Several other parties were made defendants upon allegations that they were asserting liens on some of the property. The interpleaded defendants cross-actioned for their respective debts against the Gardners and a foreclosure of their liens as against Union Bank & Trust Co., as well as the Gardners. A receiver was appointed by the court to take charge of the property and handle it pending the litigation. In that suit the bank recovered judgment for its debt with a foreclosure of liens on the property subject to prior liens of some of the defendants who reconvened and sought affirmative relief. The cross-plaintiffs also recovered judgment for their respective debts and foreclosures of first and superior liens on certain of the property. The Gardners and others who had intervened claiming remainder interests in the property appealed, and this court affirmed the judgment of the trial court (159 S.W.2d 932).

On January 4, 1943, appellee Union Bank & Trust Co. filed a motion in the court in which judgment was obtained, requesting that the receiver be ordered to sell the property upon which liens had been foreclosed and to apply the proceeds of the sale to the satisfaction of its judgment and to payment of judgments of the cross plaintiffs, which were found by the trial court to be secured by superior liens on designated pieces of the property, to the lien of said bank. In the motion the court was asked to appoint appraisers of the property covered by the judgment to ascertain the probable values.

On January 8, 1943, an order was entered finding that no objection had been made by any party to the suit to the motion filed; that by a former report filed by the receiver, he had on hand $6,000 for rents and revenues received from the property and that a large amount of back taxes were due and unpaid. The motion to order the receiver to sell the property and to appoint appraisers was sustained. Brown Harwood, Meredith R. Carb and Claude A. Arthur were appointed to ap-

praise the property. Court ordered the receiver to advertise all of the property and to make sale of it at private sale upon the best terms obtainable, and to report such sale to the court for examination and confirmation; that report be made not later than February 10, 1943.

On the last named date the receiver made a report to the court showing that he had complied with the court's order and that the highest and best bid received by him was from Union Bank & Trust Co., in the sum of $31,500. At that time the court made an order that the Clerk notify all interested parties that hearing would be had on the report of sale at 9:30 o'clock A. M. of February 19, 1943.

On that day, the date set for hearing the receiver's report, W. Scott Gardner, one of the appellants here, filed a motion to postpone final action on the report of sale in which his counsel stated for him that he was confined in a hospital and was unable to attend the hearing; that the property in the receiver's hands was worth $49,000, and much more than the offer reported by the receiver. On the date set for the hearing, evidence was introduced by appellee, concerning the value of the property to be sold.

At the conclusion of taking such testimony as was offered on February 19, 1943, the court, acting on appellant Gardner's motion, continued the hearing until March 5, 1943. On that date both appellants, W. Scott Gardner and his wife, filed an instrument opposing the confirmation of the sale reported to have been made by the receiver. In this pleading they assert the property is worth $50,000, much more than the bid made to the receiver by appellee; they also alleged that the receiver had not adequately advertised the property, attaching a copy thereof, and showing it had been inserted in only one issue of the "Shopper", twice in the Star-Telegram and once in the Dallas News; that the manner of advertising the property was not sufficient to inform prospective purchasers of its nature, kind and quality, nor did it inform the public that the property could be purchased in separate quantities.

At the March 5, 1943, hearing, appellants offered additional testimony concerning values, which exceeds in amount that previously testified to by witnesses on February 19th. At the conclusion of this hearing the court again withheld a ruling and announced to all parties that he would again hear any testimony offered by either party on April 9, 1943. On that date all parties appeared and the court announced that the meeting should be an informal one, since the court and all parties desired that the property bring as much as possible, and the court's purpose was to ascertain if any one knew of how more could be received at a sale than the amount bid by appellee; then the court inquired if any one knew of any purchaser who would pay more than had been bid; counsel for remaindermen said his clients were not interested since they had been cut off. Counsel for appellants said his contention was that the land should be sold in individual pieces and that the property had not been properly advertised. Counsel for appellee (the bidder) said that "if any person would offer as much as five dollars more than the Union Bank & Trust Company had bid on the property, that as far as that bank was concerned, they could have the property". The court then advised all parties that he would hold the matter under advisement ten or twelve days to give any one an opportunity to make a better bid. Thereafter, no better bids having been made, on May 4, 1943, an order was entered confirming the report of sale to appellee for $31,500, and ordering the clerk of the court to issue writs of possession to the purchaser when deed was made and the purchase price had been paid. From that order appellants W. Scott Gardner. and his wife have appealed, filing their statutory affidavits in lieu of an appeal bond.

The receiver's report showed a list of judgments for the payment of which liens had been foreclosed and back taxes against the property aggregating approximately $43,489; that he had collected in rents and revenues $6,400, and that the total amount on hand including the bid of appellee was $37,900.

The property involved consists of 26 tracts; 18 of them are lots or groups of lots in the City of Fort Worth; one is a 16⅔ acre unimproved tract in Tarrant County; a 100 acre unimproved tract in Nacogdoches County; two unimproved tracts of 10 and 83 acres, respectively, in Jefferson County; five lots in Jamison's Addition to Texas City, Galveston County; 2 lots in Tobin, El Paso County; 6 lots in Park Addition to Big Spring, Howard County; 3 lots in the town of Aurora, Adams County, Colorado; and certain per-

sonal property consisting of listed second hand furniture in some of the Fort Worth houses.

The effect of appellants' points is, error of the court in confirming the receiver's sale, because: (1) The price bid was wholly inadequate and certain of the property was not appraised. (2) The advertisement of the property was not such as to apprise prospective purchasers of its nature, nor that it could be bought in separate lots. (3) The receiver failed to ascertain prior to the sale that he could convey good title. And (4) There was no testimony that the receiver had required bidders to accompany their bids with a cash deposit.

Points 3 and 4 above present no reversible error for the reason neither of them was ever presented to the trial court. That court had no opportunity to consider these asserted points of error, and they present no matter of review by us.

Applicable to the first point, wherein it is complained that the sale was for an inadequate price, the court heard much testimony from expert witnesses on values of such property; all witnesses were apparently well qualified to express their respective opinions; they all differed as to values, and each explained his reason for reaching the conclusion expressed. The receiver offered the testimony of the witnesses Brown Harwood, Meredith Carb and Claude Arthur, who were appointed by the court to appraise the property, and also the witness Durwood McDonald. Each of these witnesses inspected the various properties in the City and gave his respective ideas of what each piece was worth. The aggregate of values placed on the property by Harwood was $37,000. He explained his estimate by saying that the values mentioned was one covering a period of time required to sell the properties, but that as a lump sum sale it was customary to sell at lesser values than could possibly be procured over a period of time and that he unqualifiedly believed that in a sale of all together the bid of appellee was a fair and reasonable one. Carb's estimate of aggregate values, if sold separately over such time as would be required, would be $37,450. He, too, said the contingency of time and chances of procuring purchasers at the prices estimated by him entered into his conclusions, and he further believed that in a sale of all at one time the bid of appellee was a fair price. Witness

Arthur made the same estimate of separate values as that given by Carb and explained the contingencies entering into the chance of procuring those values; but he, like Harwood and Carb, said that at a single sale of all, the bid of appellee was fair and reasonable. McDonald said he was asked by one of the appellants to inspect the property and estimate the values; he said his inspection was not an extensive one, because he could not go inside of many of the houses; that all were apparently old and needed repairs, and some were not usable in their present condition; he inspected the acreage outside of the City; he made no inspection of furnishings; his total estimate was $28,500, and added that he would not give more than $23,500 for it. He did not inspect nor estimate values of the vacant lots. None of the witnesses testified as to values of property outside of Tarrant County. They each indicated that with rentals frozen as they were, sale conditions were influenced thereby and that without expending additional sums on these properties, no change in rentals could be considered.

A. W. Jackson was offered by appellants. After inspecting the properties and placing his estimate on their respective values, his aggregate value was $44,900. He said he believed that if handled properly a dealer could work this value out of it, and that commissions for sales at that price would be $2,245. He said he included in his estimate the value of furnishings in the houses. He also said the houses would bring more at separate sales than in bulk for the reason few buyers would be interested in all in a single sale. Appellants also offered the testimony of James Hobbs. He said his estimate of values was practically the same as that of the witness Mr. Jackson. He said his firm dealt mainly in dividing and selling additions; that they did little or no brokerage business. He said government regulations affect the values and witness would take such regulations into consideration if he were to buy the properties; he knew the law regulating rentals but that where substantial improvements were made, the rentals could be raised; that if the houses were in good condition it would be easy to find a good tenant for them; he found some of the houses vacant and others occupied by tenants who paid no rent and did not expect to pay.

The receiver testified that some of the houses, when they came into his possession,

had pieces of old light weight cheap furniture in them. He rented them with the furniture in them when he could; that much of it had deteriorated and become worthless and he had found it necessary to remove all furnishing from some houses before he could rent them; he had shifted pieces from one house to another when he found a tenant that could use it; most of the rugs were worn out and had holes in them, and much of the furniture was stored, because tenants would not use it; that to salvage the furniture at any appreciable amount it would require the expenditure of money on needed repairs. Some of the tenants are still using the furnishings. Relative to the tracts of land and town lots outside of Tarrant County, the receiver said, in effect: that he had been unable to find some of it; he had tried to get it all located and to render and pay taxes, but in some instances he could get no tax statements; that he was informed that there was no such addition as that called for in the Texas City tract; he got a valuation of $10 on the lots in Tobin, El Paso County, and that no taxes had been paid on it since 1922; the only valuation he had on the 83 acres in Jefferson County was $465; that two or three years ago he had an offer of about $2.50 or $3 an acre for 100 acres in Nacogdoches County, but he could not hear anything further from the offer nor could he find from the collector the condition of the taxes, that it may have been sold for taxes, he could not find out what had been done about it. That if one should expend a sufficient amount on the Fort Worth property, he might sell it out piece at a time and get more than witness had been offered, but in his judgment the difference in what it would bring would be off-set by the expenditure, and then take the chance of selling. He said he had advertised the property for sale in the "Shopper", an advertising paper in Fort Worth, in the Star-Telegram twice, and once in the Dallas News. Both last named papers have a large circulation throughout the State. A copy of the advertisement was in evidence for inspection of the court. Witness said the bid of appellee was the best he had received, among the many coming to him.

The court had by decree entered February 10, 1943, ordered and directed the receiver to "advertise all of the property, both real and personal, described in the judgment of foreclosure heretofore entered in this cause by this court * * * and that he make sale of such property at private sale upon the best terms obtainable, and report such sale to this court," etc.

■ The question is, was there error in the confirmation of the sale reported by the receiver? Could it be said as a matter of law that the sale which the receiver asked to be confirmed was for an inadequate price? The value of the property must be determined as a matter of fact; the court recognized this rule by requiring the property appraised by experts; certainly these opinions were not conclusive, nor indeed were those of experts called by appellants; but from the conflicting reports and opinions, along with the receiver's report that the one presented was the best he had been able to obtain, the court must determine from the facts if the bid was a fair and reasonable one.

In 53 C.J. p. 213, sect. 345, this is said: "Whether or not the court should confirm or refuse to confirm a sale (by receiver) depends upon the facts and circumstances of the particular case. The determination of the matter is ordinarily within the sound discretion of the court." That authority goes on to say that unless it appears that the court's discretion has been abused, the judgment will not be disturbed.

■ It is the settled rule in this state that a receiver's sale will not be set aside for inadequacy of price alone, in the absence of facts and circumstances showing fraud or irregularities; especially is this true unless the inadequacy is so great as to shock the conscience of the court. Morrow v. De Vitt et al., Tex.Civ.App., 160 S.W.2d 977, error refused, want of merit. This rule is supported by many authorities cited in that opinion.

■ The nearest approach to there being any testimony to contradict that upon which the court apparently relied in confirming this sale, is that given by the witnesses Jackson and Hobbs, above pointed out. An analysis of their testimony will show that they believed by taking time to repair the property and find separate purchasers for each piece, and that under such conditions some would readily sell, while others would be slow and doubtless some would not produce buyers at all. The court found that the judgment creditors were insisting upon a sale to satisfy their debts in

794

which liens had been foreclosed; that execution sale by a sheriff would not produce as good results as would a deliberate private sale by the receiver.

It occurs to us from this record, that the court and all parties concerned were interested in making the property bring as much as possible. The number of bids reported by the receiver, his diligence in the matter, the numerous times the court postponed action on the motion to confirm the receiver's sale, his admonitions to the interested parties to procure or aid the receiver in procuring bids greater than that made by appellee, and the open declaration of appellee's counsel that if any one would pay five dollars more than his client had bid, they could have it insofar as appellee was concerned, all show a very deliberate and determined effort to get the best possible results. While it is true, two witnesses testified that in their judgment if the property should be handled in a way, different from what the court had ordered, more money might be realized from the sale. Of course, this was speculative. It remains that over a period of several months, with knowledge to the public and to the representatives of at least five reputable brokerage concerns, that the property would sell at the best bid, the receiver did not receive another, which was better than that of appellee.

We think that under all the circumstances before the court, he could not with consistency speculate upon incurring additional expenses for the estate, in the way of repairs, and depend upon procuring more money by making separate sales of each of the 26 pieces of real estate. The judgment creditors had procured foreclosure of their liens and were demanding sale of the securities. The speculative plan of delayed sales urged upon the court perceivably could have resulted in greater receipts, but upon the other hand, conditions could have changed for the worse. It seems to us that with all the contingencies incident to such delay and chance of loss, there was no abuse of discretion by the court when he decided to accept the bid and definitely close the matter. These ideas are discussed in a very practical way in Stokes v. Williams, 3 Cir., 226 F. 148, 153. The point

of error based upon the inadequacy of the price is overruled.

■ Second point asserts error in approving the sale because the means of advertising for bidders was inadequate, in that it did not apprise the public of the nature, type and character of the property and that the property could be bought separately, one piece from another.

The advertisement run in the several publications is necessarily lengthy, but we observe that where each lot or group of lots have buildings on them, the street number is given, number of rooms in the house and whether stone or frame. Unimproved property is so stated.

The order of the court did not instruct the receiver what means should be employed in advertising, nor that any of the pieces should be sold separately. As we view it, the receiver did precisely what the order commanded him to do. The manner and means employed by the receiver were before the court when requested to confirm the sale, and if for any reason the court considered them inadequate, he could, and no doubt would, have refused confirmation.

■ In probate matters where sales require confirmation of the court before becoming effective, it is said, in 14 Tex.Jur. 246, sect. 466: "Confirmation of a sale cures defects, mistakes, errors and irregularities in the proceedings where the court had jurisdiction and where the sale is not subject to collateral attack." We can see no reason why the same principle would not apply to sales by receivers which require the scrutiny and confirmation by the court, for their effect. There can be no question in this case but that the court had the right and it was his duty to order sale of the property by the receiver to satisfy the foreclosed liens on the property. The sale was an essential part of the jurisdiction of the court. Lauraine v. Masterson, Tex.Civ. App., 193 S.W. 708, writ of error refused. No error is presented under this point.

We have carefully studied this record and under the authorities cited and the facts involved, we find no error for which the judgment should be reversed, and it is therefore affirmed.