## CORNELISON v. FIRST NAT. BANK OF SAN ANGELO et al.

### No. 9759.

Court of Civil Appeals of Texas. Austin.
March 2, 1949.

Rehearing Denied March 23, 1949.

Scott Snodgrass, of San Angelo, for appellant.

Kerr & Gayer, Upton, Upton, Baker & Griffis and W. A. Griffis, Jr., all of San Angelo, for appellees.

HUGHES, Justice.

This suit involves the right of appellant, Jean Cornelison, to compel the First National Bank of San Angelo, as Receiver, to execute and deliver to him an oil and gas lease upon certain lands in Coke County.

J. F. Johnston owns a life estate in the lands and the remainder is owned by his children, children of a deceased child, and unborn children of J. F. Johnston.

Appellee Bank is Receiver of the lands and Trustee for the life tenant and remaindermen who are co-appellees with the Bank.

For an historical background of this receivership we refer to the opinion of the Dallas Court of Civil Appeals in the case of Johnston v. Johnston, 276 S.W. 776.

The validity of the receivership is not questioned and to the facts set out in the above opinion we need only add here that property in Dallas County was sold, the receivership transferred to Tom Green County and the Coke County lands purchased with receivership funds.

Appellant, desiring to buy an oil and gas lease on the Coke County lands, approached J. F. Johnston, and after some discussion appellant was told to see Mr. Lee Upton, at-

torney for the Receiver Bank, who would prepare the papers. This he did and a week or two later the following letter, dated March 25, 1947, was sent by the law firm of Upton, Upton and Baker to appellee Bank, J. F. Johnston, Henry Tyler (husband of one of the remaindermen), and appellant, Cornelison:

"Gentlemen: We understand that it has been agreed with Jean Cornelison that the Coke County Ranch belonging to the J. F. Johnston Estate, containing about 7-½ sections of land, will be leased to him for a primary term of ten years, with a bonus or down payment of $2.00 per acre, and an annual rental of 50¢ per acre, with a provision that if drilling is commenced upon any of this land, it will only suspend the annual rentals on the tract or tracts where drilling is being done, and the remainder of the land will be paid upon annually, or forfeited.

"By reason of this ranch land being in trust, the effect of which is a life estate in J. F. Johnston with the remainder to his children or the descendants upon his death, the bank being the Trustee, the bonus and annual rentals will be divided equally; that is, J. F. Johnston will receive ½ of the bonus and ½ of the annual rentals and the Bank as Receiver and Trustee will receive the other ½, and after paying the expenses, it will take out its commissions and deposit the remainder as part of the capital estate.

"The reason Henry Tyler is named as representing the children of J. F. Johnston is that it will be necessary to procure the consent of the children and descendants of the children of J. F. Johnston in order to insurance a primary term of ten years should J. F. Johnston die before the expiration of ten years.

"Before the proceedings are started, to obtain the order of the Court, I will be glad if all parties concerned will see if I have correctly named the terms and conditions of the agreement."

On March 31, 1947, the Bank, as Receiver and Trustee, filed an application in the receivership case for authority to execute and deliver an oil and gas lease to appellant reciting that appellant was desirous of leasing the lands for oil and gas purposes for a primary term of ten years with a bonus of $2 per acre and a fifty-cent delay rental. The application further stated that J. F. Johnston had possession and control of the surface of the lands for life and he would not execute or permit an oil or gas lease to be executed unless he received part of the consideration and that the Bank, as Receiver and Trustee, had agreed that J. F. Johnston was to receive one-half of the bonus, one-half of the delay rentals and one-half of the usual one-eighth royalty, and that the Bank as Receiver and Trustee, after paying all expenses, was to receive and deposit the remainder for the benefit of the capital of the trust.

On April 1, 1947, the above application was granted, the order providing that the Bank, as Receiver and Trustee, joined by J. F. Johnston "is hereby authorized, empowered and instructed to execute and deliver to Jean Cornelison an oil and gas lease" for the consideration stated in the application, to be distributed as follows:

"It is Further Ordered, Adjudged and Decreed that if and when the bonuses and rentals above set out are paid, then and at that time the Bank as Receiver and Trustee will receive one-half of such bonuses and rentals, and the said Jas. F. Johnston will receive the other one-half, and the Bank is hereby relieved from any and all duties to account for the one-half interest in such money after it is turned over to the said Jas. F. Johnston, but that part of said moneys received by it as rentals, etc., after the payment of the expenses, etc., is to be deposited as part of the capital of said Trust Estate.

"It is further ordered that if and when production is had, then the royalty is to be divided one-half (½) to Jas. F. Johnston and the other one-half to the Bank, and accounted for as above set out."

On July 24, 1947, the Bank filed a motion in the receivership proceedings to vacate the order of sale dated April 1, 1947, for the reason "that the parties concerned failed to reach an agreement and were unable to consummate the oil and gas lease as set out in said order."

This motion was granted August 28, 1947.

The evidence shows that appellant was ready, able and willing to purchase the

lease on the terms set out in the order of sale.

The trial court, unaided by a jury, rendered judgment denying appellant any relief.

Appellant's single point is that the trial court erred in refusing to render judgment decreeing performance of his contract for purchase of the oil and gas lease.

■ In our opinion this point embraces the following questions: (1) Does the law require confirmation of a sale made by a receiver acting under orders of the court? (2) If so, did the trial court err in refusing to confirm a sale to appellant?

We consider an affirmative answer to the first question required by the following authorities: Baumgarten v. Frost, 143 Tex. 533, 186 S.W.2d 982, 159 A.L.R. 428; Miesch v. Anderson, Tex.Civ.App., Texarkana, 90 S.W.2d 314. If the case of Yount v. Fagin, Tex.Civ.App., Beaumont, 244 S.W. 1036, Writ Dis. WOJ., is in conflict with this holding, it must yield to the decision of the Supreme Court in the case above cited.

■ Confirmation of a receiver's sale is a matter of discretion depending upon the facts and circumstances of each case and only an abuse of discretion will be reversed on appeal. Gardner v. Union Bank & Trust Co. of Ft. Worth, Tex.Civ.App., Ft. Worth, 176 S.W.2d 789; Russell v. S. & M. Amusement Co., Tex.Civ.App., Waco, 198 S.W.2d 944, Writ Ref. NRE.

The application made to the court for authority to lease the lands to appellant reflects an agreement made between the Receiver and J. F. Johnston as to division of the bonus, delay rentals and royalty which the Receiver had no power to make. This same agreement carried forward in the order of sale is no less impotent.

We find an explanation for this extraordinary proposal or agreement on the part of the Receiver Bank and for the action of the trial court in including such proposal or agreement in the order of sale, in the following colloquy between counsel and the Trial Judge:

"Mr. Upton: We believe the law is that the Court will take judicial notice of everything that happened in the procuring of these orders and conditions and limitations and the knowledge the Court has of when and how that would be defined.

"The papers are before the Court, but the point I am making now is that the Court had information as a matter of law that the bank couldn't take all of this, give a part of this bonus and delay rentals without the consent of the children, and the children have to consent before it would be binding.

"The Court: The Court raised that question with the bank at the time the application was filed.

"Mr. Snodgrass: What in substance was the conversation?

"The Court: Mr. Tyler stated to the Court that they were contemplating making a lease. That was before the application was filed whereby Mr. Johnston would receive part of the bonus. I told him I thought a bonus should be paid to the bank as receiver and trustee, and he stated at the time the children would all ratify the lease, if made, and ratify the fact that Mr. Johnston was to receive part of the bonuses.

"Mr. Snodgrass: He stated in effect that such a commitment had been reached for the children?

"The Court: He stated that they were contemplating making an oil and gas lease, the bank was, with Mr. Johnston sharing the bonuses. If the lease went through the children would ratify the receivers of the money.

"Mr. Snodgrass: Do I understand that Mr. Tyler represented that the children had committed themselves to the approval of this application?

"The Court: I wouldn't say that. I would say that they were contemplating making a lease but that was before the motion was filed, and that if the lease was made the children would ratify it.

"Mr. Snodgrass: And did he in effect represent that there was a commitment from the children?

"The Court: At the time of the conversation with Mr. Tyler I had no information whether the children had agreed to it or not; that was just in contemplation that would be done if the lease was made."

The trial court also found as a fact:

"That the bank never agreed verbally or otherwise to execute the oil and gas lease as herein described, without the consent of the remaindermen, as well as the consent of the said James F. Johnston, and with the approval of the Court. That when the application for an order of this Court to execute the oil and gas lease was filed, the Court was advised that it was not to be operative unless and until the children of James F. Johnston and the children of a deceased son of James F. Johnston, and James F. Johnston individually had consented to same, and agreed to the terms of same."

"That the children of James F. Johnston and the children of the deceased son of James F. Johnston and none of them ever agreed directly or indirectly to the making of an oil and gas lease, and that none of them ever agreed verbally or otherwise to the terms and conditions of the lease, as set out in plaintiff's petition."

We believe both of these findings to be supported by the evidence.

That the Receiver Bank would not execute a lease without the consent of the remaindermen is shown by the letter of March 25th by its attorneys and a copy of which was sent to appellant. That the trial court had a similar understanding is indicated by his remarks which are quoted above.

While it may be argued or inferred that the Bank would not have agreed with J. F. Johnston to give him monies and royalties which belonged to the remaindermen unless their consent had been obtained, the trial court was certainly not required to base a judgment on such inferences. Some of the remaindermen were married women; none executed any writing signifying consent to an otherwise admittedly invalid agreement and no remainderman testified to having given his or her consent.

Under these circumstances it is small wonder that the trial court denied confirmation.

Appellant has no just cause to complain. The Bank informed him, through its attorneys, in the beginning that consent of the remaindermen was required. Appellant knew or should have known that approval of the court could not even be hoped for unless all concerned were satisfied. The transaction was extremely unorthodox and was so recognized by the trial court; and its approval could only be justified by much better evidence than is found in this record.

■ We, therefore, conclude that the trial court did not abuse his discretion in refusing to confirm the sale to appellant, and the judgment appealed from is affirmed.

Affirmed.

### On Rehearing.

■ Appellant suggests that our determination that the trial court did not abuse his discretion in refusing to confirm the sale is not a proper reason for affirming the judgment because of insufficient findings of the court, citing Rule 299, Texas Rules of Civil Procedure, and requests that the case be reversed and remanded for a trial of this issue.

If we are correct in holding that a sale by the receiver must be confirmed by the court, then appellant, having failed to plead or prove such confirmation, did not plead or prove a cause of action against the receiver for specific performance, and the judgment of the trial court was the only one which could have been rendered, if the cause of action be viewed strictly as one for specific performance against the receiver.

Believing that the only tenable theory of recovery was to show that the trial court abused his discretion in refusing to confirm the sale, we liberally construed the issues to include this theory. If we erred in this regard, it was in appellant's favor.

The motion is overruled.

Overruled.