**Mohammad SALAYMEH, Appellant,**

v.

**PLAZA CENTRO, LLC and Peter E. Pratt, Jr., Receiver, Appellees.**

**No. 01–06–01178–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 8, 2008.

Robert A. Plessala, Cokinos, Bosien & Young, Houston, TX, for Appellant.

Peter Evans Pratt Jr., Pratt & Malone, Allan D. Goldstein, Morris, Lendais, Hollrah & Snowden, P.C., James H. Hull, Hull & Associates, P.C., Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, HANKS, and HIGLEY.

## OPINION

GEORGE C. HANKS, JR., Justice.

This is an appeal of the confirmation of a judicial sale of real property to satisfy a judgment against Mohyadine Salaymeh ("Mohyadine") and a summary judgment granting declaratory relief in favor of Plaza Centro, LLC ("Plaza Centro"), the purchaser of the property. Mohammed Salaymeh, ("Mohammad"), Mohyadine's brother and former business partner, claims a beneficial ownership interest in the property sold to Plaza Centro. In three issues, Mohammad argues that the trial court erred by confirming the sale and granting summary judgment declaring that Plaza Centro is the lawful owner of the property and awarding Plaza Centro its attorney's fees. We affirm.

## Background

Tablecraft Products Inc. ("Tablecraft") sued Mohyadine for failure to pay its invoices for goods and services provided to Mohyadine. In June 2003, a default judgment was entered in favor of Tablecraft and against Mohyadine in the amount of the unpaid invoices, $12,544.28, plus interest and reasonable attorney's fees. Mohyadine failed to pay this judgment.

In May 2004, almost two years later and at the request of Tablecraft, the trial court issued an order (the "Receivership Order") appointing Peter Pratt (the "Receiver") to attach and sell Mohyadine's real property to satisfy the judgment. The Receivership Order specifically identifies the property at 525 Crosstimbers Street Houston, Texas (the "Property") owned by Mohyadine as being subject to a judicial sale as payment for the judgment. The Receivership Order also specifically provides that the Receiver is authorized to sell by private or public sale, all or part of Mohyadine's right, title, and interest in and to the Property "to any person or entity ... for [a] purchase price deemed to be reasonable by Receiver in his sole discretion, and on terms and in any manner whatsoever deemed to be reasonable by the Receiver in his sole discretion."

On May 18, 2005, almost one year after the Receiver had been appointed to sell the Property, Mohammad filed a document in the real property records entitled "Warranty Deed," which purports to convey the Property from Mohyadine to Mohammad.[1] The Warranty Deed was signed by Mohammad, purportedly on behalf of Mohyadine, under a power of attorney that was prepared by Mohammad.[2] Mohammad contends that, at the time he filed the deed, he was unaware of the default judgment against Mohyadine or that the property was subject to the control of the Receiver.

One week later, the trial court signed an order specifically authorizing the Receiver to proceed with the sale of the Property. While attempting to sell the property, the Receiver learned of the Warranty Deed filed by Mohammad. In September 2005, the Receiver informed Mohammad by letter that the deed was not valid because it was filed after the Property had been placed under the control of the Receiver and demanded that Mohammad execute another deed transferring the Property to the Receiver. After Mohammad did not relinquish his claims to the Property, the Receiver filed a motion to hold Mohammad in contempt for filing the deed. In October 2005, Mohammad filed a response asserting that he had an ownership interest in the Property. On or about November 15, 2005, the Receiver sold the Property at a private sale to Plaza Centro for $150,000.

On February 28, 2006, Mohammad and the tenants on the Property received letters from Plaza Centro identifying Plaza Centro as the new owners of the Property and directing the tenants to remit rent to Plaza Centro. Mohammad contends that this was the first time that he learned of the sale of the Property.

On April 25, 2006, almost three years after the default judgment had been taken against Mohyadine, Mohammad filed a Petition in Intervention requesting a declaratory judgment that the deed conveying the property to Plaza Centro be set aside and declaring that Mohammad was "the lawful owner" of the Property. Mohammad argued that the Receiver's sale was not lawful because, among other things, there had been no confirmation of the sale by the trial court.

In response to Mohammad's intervention, the Receiver filed a motion to confirm the sale of the Property to Plaza Centro. Plaza Centro filed a claim for declaratory relief and attorney's fees asserting that Mohammad's intervention cast a cloud on its title to the Property and should be removed. Plaza also moved for summary judgment on its claim. Mohammad filed an objection to confirmation, a motion to set aside the sale, and a response to Plaza Centro's motion for summary judgment.

The trial court signed an order confirming the sale and, following an evidentiary hearing, the trial court denied Mohammad's objection to the confirmation and denied his motion to set aside the sale of the Property to Plaza Centro. The trial court also granted Plaza Centro's motion for summary judgment for declaratory relief and granted its attorney's fees. This appeal follows.[3]

---

1. Mohammad asserts that the conveyance was part of an agreed settlement of a business dispute between the brothers. Mohammad asserts that the property was not immediately deeded to Mohammad following the settlement because Mohyadine had a $25,000 loan against the property that was not paid off until February 2005.

2. This power of attorney was never filed in the real property records.

3. Mohyadine has never challenged (1)the default judgment against him, (2) the appoint-

## Confirmation of the Sale

In his first issue, Mohammad argues that the trial court erred in confirming the sale of the Property and overruling his objections to the confirmation because (1) the Receiver sold the Property at a price that was not fair and reasonable; (2) the Receiver provided no notice of the sale to Mohammad; (3) the "process of the sale" did not comply with Texas law; and (4) under the principles of equity, the court should have considered other methods of satisfying the judgment against Mohyadine before placing the Property in receivership and approving its sale. We disagree.

### Standard of Review

■ The sale of property in receivership is generally not effective until the sale is reported by the receiver and confirmed by the court, after notice to the parties. *Baumgarten v. Frost*, 143 Tex. 533, 186 S.W.2d 982, 985 (1945); *Miesch v. Anderson*, 90 S.W.2d 314, 318 (Tex.Civ. App.–Texarkana 1936, no writ). In confirming the sale, the court must determine from all of the facts and evidence whether the bid received was fair and reasonable. *Gardner v. Union Bank & Trust Co. of Ft. Worth*, 176 S.W.2d 789, 793 (Tex.Civ.App.– Fort Worth 1943, no writ). Confirmation of a receiver's sale is a matter for the trial court's discretion depending on the particular facts of each case, and we will reverse this decision only upon a showing that the trial court has abused its discretion. *Id.; Gibson v. Smith*, 511 S.W.2d 327, 329 (Tex. Civ.App.–Tyler 1974, no writ). We will not set aside a receiver's sale for inadequacy of the price alone, in the absence of facts and circumstances showing fraud or mate-

rial irregularities. *Gardner*, 176 S.W.2d at 793. However, under the principles of equity, an abuse of discretion may be found, and the trial court's confirmation of the sale set aside, where there is a showing that the inadequacy of price received for the property is "so great as to shock the conscience of the court." *Id.*

### Fair and Reasonable

■ First, Mohammad contends that the $150,000 purchase price for the Property was not fair and reasonable because the Property has a fair market value of between $400,000 and $500,000. In support of this assertion, Mohammad testified that, prior to the sale of the Property to Plaza, he received but rejected an offer from Aziz Shah to purchase the property for as much as $400,000. Shah, a tenant on the Property and close friend of both Mohammad and Mohyadine, testified that he made this offer.[4]

■ Under the circumstances of this case, we cannot say that the trial court erred in rejecting the testimonial evidence regarding past offers for the Property. The trial court is the sole decider of the candor, demeanor, and credibility of the witnesses and, as fact finder, may decline to accept as true the testimony of an interested witness even if uncontradicted. *See Glassman & Glassman v. Somoza*, 694 S.W.2d 174, 176 (Tex.App.–Houston [14th Dist.] 1985, no writ). Moreover, contrary to Mohammad's testimony, there was credible, probative evidence before the trial court to support the conclusion that the price paid for the Property was fair and

---

ment of the Receiver or his right to sell the property, or (3) the disposition of the proceeds of the sale. Although Mohyadine appeared and testified at Mohammad's motion to set aside the Receiver's sale, he did not file any pleadings seeking affirmative relief, challenge the Receiver's action or conduct, or

challenge Plaza Centro's purchase of the Property.

4. The record reflects that, at the time of Shah's testimony, Plaza Centro was in the process of evicting Shah from the Property.

reasonable and "not well below its market value" as Mohammad contends.

■ Here, the court was presented with evidence that the price paid for the Property *was actually greater* than the $147,350 value assessed on the property in 2005 by the Harris County Appraisal District ("HCAD"). The trial court also heard evidence that HCAD placed this value on the property *as a result of Mohammad's representations under oath* to HCAD as to the fair market value of the Property and his successful protests of HCAD's initial valuations of the property at a higher price.

Although Mohyadine is listed in HCAD's records as the legal title owner of the Property, Mohammad, on behalf of Mohyadine, handled the protests of HCAD's valuations of the Property. Mohammad testified that, each year, from 2002 through 2005, he represented to the HCAD, under oath, that the value of the Property was no more than $149,000 and as low as $139,000. Specifically, on October 19, 2005, less than one month before the actual sale of the Property to Plaza Centro, Mohammad asserted to HCAD that the fair market value of the Property *was $140,000*. In explaining his valuation of the Property at $140,000, Mohammad represented to HCAD that the Property is located in "a depressed area with no potential to be enhanced," and "the building is below average." Despite these prior representations to HCAD, Mohammad testified that, in light of rumors of potential development in the area, he believed that the Property was really worth more than $400,000. Accordingly, we hold that the evidence supports the conclusion that the price paid for the Property was fair and reasonable. *See Gardner*, 176 S.W.2d at 794.

## Adequate Notice of the Sale

■ Next, Mohammad contends that the trial court erred in confirming the sale because the Receiver sent notices regarding the sale only to Mohyadine and not Mohammad personally. Thus, Mohammad argues that he did not have notice and the opportunity to be heard regarding this sale until after it had been completed. We disagree.

Here, the record contains evidence from which the trial court could conclude that Mohammad knew or reasonably should have known about the sale and had the opportunity to be heard regarding the Property prior to its sale to Plaza Centro. Although the orders and notices regarding the sale were addressed to Mohyadine, the record owner of the Property, they were sent to Mohammad's home address. There was evidence that, in May 2005, Mohammad actually signed the green card receipt for the letter containing the Application to Sell the Property filed by the Receiver. The trial court also heard evidence from one of the tenants on the Property who testified that he personally gave Mohammad a letter containing a copy of the application that was sent to the Property address.

In addition to testimony about the mailing of the notices and orders, the record contains evidence of Mohammad's participation in the receivership proceedings, which supports the conclusion that Mohammad knew or reasonably should have known about the sale and had the opportunity to be heard regarding the Property prior to its sale. In September 2005, two months before the sale, the Receiver sent a letter to Mohammad informing him of the receivership and demanding that he file a new deed transferring the Property to the Receiver. When Mohammad failed to comply, the Receiver filed a motion to hold Mohammad in contempt. The motion

addressed the Receiver's plans to sell the Property, and the Receiver testified that he attached to the motion copies of all of the pleadings and orders up to that time. Mohammad filed a response to this motion.

Subsequently, Mohammad's lawyer and the Receiver discussed Mohyadine's assets that could satisfy the judgment. After Mohammad failed to abide by his agreement to provide information to the Receiver regarding the location of Mohyadine's assets, the Receiver contacted Mohammad's lawyer by e-mail and informed him that he believed that Mohammad was deliberately trying to interfere with the collection of the debt, and that the Receiver was inclined to proceed with the sale of the property. In light of this evidence, we cannot hold that the trial court erred in rejecting Mohammad's testimony as to his lack of knowledge about the pending sale. *See Glassman & Glassman,* 694 S.W.2d at 176. Accordingly, we hold that the evidence supports the trial court's conclusion that Mohammad received adequate notice of the sale.

### No Violation of State Law

Mohammad argues that the trial court also erred in confirming the sale because the proper procedures were not followed in completing the sale. Specifically, Mohammad contends that the trial court erred by (1) confirming the sale after rather than before the Receiver had sold the Property, (2) confirming the sale even though it did not receive notice from the Receiver of the specific terms of the sale until after the Receiver had sold the Property, and (3) failing to expressly authorize the disbursement of the proceeds of the sale by written order. We disagree.

None of the procedures asserted by Mohammad is required by statute, nor has any Texas court ever held that equity compels a court to follow all of these procedures in every case before an appellate court may affirm a trial court's confirmation of a sale. *See, e.g., Gardner,* 176 S.W.2d at 793–94. As discussed, the trial court acted within its discretion in concluding that the price paid for the Property was fair and reasonable and that Mohammad knew or reasonably should have known about the sale. Texas courts have long held under these circumstances that confirmation of a sale by the trial court cures all defects, mistakes, errors, and irregularities in the proceedings where the court had jurisdiction and where the sale is not subject to collateral attack. *Id.* at 794. Accordingly, we hold that the procedural defects alleged by Mohammad, under the facts presented, do not constitute grounds for reversing the trial court's confirmation of the sale.

### Equity

Finally, Mohammad argues that it was unjust for the trial court to place the Property under receivership to be sold in light of the fact that the value of the property greatly exceeded the judgment debt. We disagree.

Mohammad has cited no authority for the purported requirement that the value of the property subject to a judicial sale must be near the value of the outstanding debt before a court can order the property to be sold to satisfy the debt. Nor do the courts need to create such an equitable requirement to protect the rights of a judgment debtor. If the value of the property sold exceeds the debt, the judgment debtor may file a motion with the trial court to have any excess proceeds returned to him.

We overrule point of error one.

### Summary Judgment

In his second point of error, Mohammad argues that the trial court erred in granting summary judgment and awarding attorney's fees in favor of Plaza Cen-

tro because Plaza Centro's (1) declaratory judgment counterclaim and (2) expenditure of attorney's fees to bring this counterclaim were "unnecessary." Mohammad contends that, despite the fact that he named Plaza Centro as a defendant in his Intervention, he does not dispute its ownership of the Property. Mohammad asserts that, after being advised of Plaza Centro's position regarding its ownership of the Property and reviewing its legal authority, he "tacitly acknowledged" that the warranty deed he filed for the Property was void. Mohammad contends that "he has never in these proceedings asserted that the deed conveyed good title to him"; therefore, Plaza Centro did not need to file a counterclaim for a declaratory judgment that Plaza Centro was the lawful owner of the Property, or incur attorney's fees to remove a cloud on the title of the Property in response to Mohammad's intervention.

Mohammad cites no authority in support of this point of error. Furthermore, contrary to his present assertions, the record reflects that Mohammad did not withdraw his claim to ownership to the Property before the trial court granted Plaza Centro's motion. Rather, the record shows that Mohammad refused to sign a deed transferring ownership to the Receiver, and he never withdrew or amended his intervention seeking a declaratory judgment that he, not Plaza Centro, was the lawful owner of the Property. Mohammad never filed any pleadings reflecting his purported acknowledgment that he does not have any superior right of ownership over the Property against Plaza Centro. Accordingly, we hold that the trial court did not err in granting the motion for summary judgment.

We overrule point of error two.

**Pending Motion for Accounting**

In his third point of error, Mohammad argues that the trial court could not have granted final summary judgment because a motion for receivership accounting was still unresolved when the trial court signed the summary judgment. Citing the holding in *Chessher v. Southwestern Bell Telephone Co.*, 658 S.W.2d 563, 564 (Tex.1983), Mohammad argues that, because Plaza Centro's motion for summary judgment does not address this unresolved motion, the court could not grant final summary judgment in favor of Plaza Centro. Mohammad's reliance on this holding is misplaced.

Under the holding in *Chessher*, an unresolved motion for accounting does not prohibit the trial court from granting Plaza Centro's motion for summary judgment. In *Chessher*, the Texas Supreme Court held that a proponent's motion for final summary judgment cannot be granted unless the motion addresses all pending *claims* against the proponent. *Chessher*, therefore, does not require the motion for summary judgment to address unresolved or pending *motions*. Because the motion, and thus the order granting summary judgment, disposed of all pending claims, it constitutes a final judgment. Furthermore, the record reveals that the trial court addressed Mohammad's motion for accounting in the December 13, 2006 order granting summary judgment in favor of Plaza Centro, in which the trial court denied all relief sought by Mohammad.

Accordingly, we overrule point of error three.

## Conclusion

We affirm the trial court's confirmation of the sale of the Property and judgment in favor of Plaza Centro.