# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00338-CV

**Mary Kay McQuigg a/k/a Mary Katherine Carr, Appellant**

**v.**

**Don L. Carr, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT
### NO. 05-0921, HONORABLE WILLIAM HENRY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is a partition case in which real property owned by a family business partnership was sold by a receiver appointed by the district court. The court then allocated the net proceeds from the sale among the partners. One of the partners, appellant Mary Kay McQuigg, challenges (1) certain equitable factors the district court considered in its allocation of the sale proceeds, and (2) the evidentiary sufficiency for the court's findings. We affirm the judgment of the district court.

This suit involves the dissolution and winding up of a partnership between McQuigg and her brother, appellee Don L. Carr. McQuigg and Carr began purchasing real estate together in March 1983. They owned the real property jointly, although they never formalized their relationship through a written partnership agreement. After a number of years, the parties decided to divest themselves of their jointly owned property. They did so without litigation until there was a single jointly owned asset remaining. The final asset held by the partnership, referred to by

the parties as the "Junction Property," consisted of approximately six acres of land in Wimberley, Hays County, Texas. McQuigg and Carr were unable to reach agreement on the disposition of the Junction Property, and on May 26, 2005, Carr filed suit in Hays County district court to partition the property. *See* Tex. Prop. Code Ann. § 23.001 (West 2000) (joint owner of real property may compel partition of the property), § 23.002(a) (West 2000) (partition action may be brought in district court of county in which property located).

On February 28, 2006, the district court issued an order to the effect that McQuigg and Carr each owned an undivided one-half interest in the Junction Property in fee simple, and that the property was not susceptible to fair and equitable partition in kind. *See* Tex. R. Civ. P. 760 (court shall determine the share or interest of each joint owner), 761 (court shall determine before entering decree of partition whether the property, or any part thereof, is susceptible of partition). The district court appointed a receiver to market and sell the Junction Property, and ordered the parties to set a hearing before the court following the sale of the property to "obtain final orders directing the distribution of the net sales proceeds of the Junction Property." *See* Tex. R. Civ. P. 770 (setting out procedures for partition action in which property incapable of division).

The receiver sold the property to McQuigg for $450,000 on May 23, 2007, resulting in $414,664.67 in net sale proceeds to the partnership. The receiver filed a report of the sale with the district court. Following a bench trial, the district court entered judgment on February 27, 2008, distributing the net proceeds from the sale of the Junction Property. In findings of fact and conclusions of law issued on March 13, 2008, the district court found that the parties each contributed to the property, with Carr contributing labor, materials, and money from his construction

2

business, and McQuigg contributing money for the down payment and some mortgage payments. Based on Carr's stipulation to owing the partnership an amount in excess of $8,000 in sales proceeds from two other investment properties of the parties, the court divided the Junction Property sale proceeds $203,282.34 to Carr and $211,382.33 to McQuigg.

McQuigg appeals the judgment of the district court, asserting that the following paragraph of the court's findings of fact and conclusions of law contains error requiring that the judgment be reversed:

> Mary Kay McQuigg is due $150,000 for her contributions to the Junction Property. However, Mary Kay McQuigg purchased the Junction Property for $450,000 when the Property had a fair market value of $600,000, so Mary Kay McQuigg has received value of $150,000 over her purchase price. The Court concludes that the amount she is due has been fully satisfied by her receipt of this additional land value over her purchase price.

McQuigg challenges the district court's power to offset the partnership's obligation to McQuigg based on the receivership sale being below fair market value when that sale had been approved by the court. McQuigg also challenges the evidentiary sufficiency for the findings on which the district court based such offset.

A partition suit does not proceed independently of the rules of equity. *See* Tex. R. Civ. P. 760 ("Upon the hearing of the cause, the court shall determine the share or interest of each of the joint owners or claimants in the real estate sought to be divided, and all questions of law or equity affecting the title to such land which may arise."); *Thomas v. Southwestern Settlement & Dev. Co.*, 123 S.W.2d 290, 296 (Tex. 1939) ("In this state partition by suit, whether brought under the statute or without the aid of the statute, does not proceed independently of the rules of equity."). The

3

trial court may apply rules of equity in determining the broad question of how property is to be partitioned. *Yturria v. Kimbro*, 921 S.W.2d 338, 342 (Tex. App.—Corpus Christi 1996, no writ). Indeed, in its findings and conclusions, the district court stated that it took into account "the equities pertaining to each party's contributions to the Junction Property as well as their other properties, and each party's conduct in connection with their ownership of the Junction Property." McQuigg contends, however, that the district court's authority to apply rules of equity in partitioning the Junction Property sale proceeds did not extend to revisiting the amount for which the court-appointed receiver had sold the property.

According to McQuigg, the Texas Revised Partnership Act (TRPA)[1] controls the division of the Junction Property sale proceeds. Generally, the TRPA governs the relations between partners absent agreement otherwise. *See Coleman v. Coleman*, 170 S.W.3d 231, 236 (Tex. App.—Dallas 2005, pet. denied). Section 8.06(b) of the TRPA governs the disposition of the partnership assets upon the winding up of the partnership. *See id.*

> Each partner is entitled to a settlement of all partnership accounts on winding up the partnership business. . . . The partnership shall make a distribution to a partner in an amount equal to that partner's positive balance in the partner's capital account. Except as provided by Section 3.07 or 3.08(a), a partner shall contribute to the partnership an amount equal to that partner's negative balance in the partner's capital account.

Tex. Rev. Civ. Stats. Ann. art. 6132b-8.06(b) (West Supp. 2008). Although section 8.06(b) itself does not contemplate an equitable offset, principles of equity continue to apply when not

---

[1] Tex. Rev. Civ. Stats. Ann. arts. 6132b-1.01 to -11.05 (West Supp. 2008).

contradicted by the statute. *See id.* art. 6132b-1.04(a) (West Supp. 2008) ("Unless displaced by a particular provision of this Act, the principles of law and equity supplement this Act."); Tex. R. Civ. P. 776 ("No provision of the statutes or rules relating to partition shall . . . preclude partition in any other manner authorized by the rules of equity, which rules shall govern in proceedings for partition in all respects not provided for by law or these rules."). Since section 8.06(b) does not prohibit the court from adjusting a partner's balance or interest in proceeds of partnership assets, the district court was authorized to do so under principles of equity. *See Gilleland v. Meadows*, 351 S.W.2d 656, 658 (Tex. Civ. App.—Dallas 1961, no writ) (equity required offset against claim for contribution in partition suit).

McQuigg refers to case law holding that a receiver's sale should not be set aside based on the sales price being inadequate unless there is a showing of fraud or material irregularities, or a showing that the inadequacy of the price received is so great as to shock the conscience of the court. *See Salaymeh v. Plaza Centro, LLC*, 258 S.W.3d 236, 240 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *Gardner v. Union Bank & Trust Co.*, 176 S.W.2d 789, 793 (Tex. Civ. App.—Fort Worth 1943, no writ)). This standard does not apply here because Carr did not seek to set aside the receiver's sale. McQuigg argues, however, that because Carr did not seek to set aside the sale and the district court approved the sale, the district court could not revisit the adequacy of the sales price as part of its equitable considerations in the distribution of the sale proceeds. According to McQuigg, the court's finding that the sales price was $150,000 below fair market value "irreconcilably conflicts" with its confirmation of the receivership sale.

5

Under the circumstances of this case, we disagree. This might be a closer question if the only applicable evidence was the receiver's sale itself and appraisals or other evidence demonstrating that the property was worth more, but this is not such a case. To the contrary, there was also evidence before the court of McQuigg's behavior negatively impacting the partnership's ability to obtain the full fair market value of the Junction Property upon its sale. Carr testified that McQuigg allowed her son Mark McQuigg to move onto the property against Carr's wishes. According to Carr, McQuigg and Mark "trashed the property," allowed junk to accumulate on the property, dissuaded potential buyers from coming onto the property, and approached the receiver numerous times in a "harassing and threatening manner." A neighbor who lived a few hundred yards from the Junction Property testified to extremely loud music playing day and night from Mark's house, even when no one was there. Two former business tenants on the Junction Property testified separately to rude and threatening behavior by McQuigg and Mark between 2004 and 2007 that eventually caused them to discontinue their leases. The neighbor also testified to his approaching the property with a real estate agent after it was placed on sale, but never entering the property due to Mark's "intimidating" presence. There was also evidence that Mark had placed "sold" signs on top of the property's "for sale" signs when no sale had yet occurred. Once McQuigg purchased the property, according to the neighbor, the disruptive behavior on the property ceased. Carr also testified to McQuigg's refusal to explore purchase options with adjacent landowners who in 2004 had indicated interest in purchasing the property for approximately $500,000. The receiver's report of sale itself alludes to these extraneous circumstances. The report states that $450,000 was the "maximum price currently obtainable," in light of "limiting conditions of the property unknown

6

to the Receiver at the time of the entry of the Court's Order . . . but discovered in the course of marketing the property."

Therefore, the district court's offsetting McQuigg's interest in the sale proceeds based on the Junction Property's sales price being below fair market value is reconcilable with the court's confirmation of the receiver's sale. In confirming a receiver's sale, the court's determination whether the bid received was fair and reasonable is based on all of the facts and evidence. *See Salaymeh*, 258 S.W.3d at 240; *B.B.M.M., Ltd. v. Texas Commerce Bank-Chem.*, 777 S.W.2d 193, 197 (Tex. App.—Houston [14th Dist.] 1989, no writ) (approving sale where evidence included fact that accepted offer was best one received in eighteen months property had been on sale). We hold that while the price paid for the Junction Property may have been fair and reasonable based on the condition of the property at the time of sale, it was within the district court's equitable power to adjust the amount of sale proceeds distributed to McQuigg in the partition suit because the evidence was sufficient for the court to conclude that McQuigg was responsible for damaging the condition of the property in such a manner as to reduce the fair and reasonable sales price. *See Callicoatte v. Callicoatte*, 417 S.W.2d 618, 621 (Tex. Civ. App.—Waco 1967, writ ref'd n.r.e.) (holding that in partition suit, "all equities" should be considered and adjusted).[2]

Next, McQuigg argues that the evidence is legally and factually insufficient to support the findings of the district court under which it made its offset. Specifically, McQuigg challenges

---

[2] McQuigg alleges that the district court's offset granted a remedy not sought by Carr in his pleadings. To the contrary, Carr's pleadings state that "Defendant has diminished the value of the Property" and that "any claim for contribution by Defendant should be offset by Defendant's disputed occupancy of the Property adverse to Plaintiff's interest and by all of Defendant's wrongful conduct alleged herein."

the court's findings that her contributions to the partnership be reimbursed only in the amount of $150,000, and that the fair market value of the Junction Property was $600,000.

For a legal sufficiency challenge, we review the evidence in the light most favorable to the judgment, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We will sustain McQuigg's legal sufficiency complaint if the record reveals: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *See id.* at 810. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

For a factual sufficiency challenge, we must consider and weigh all the evidence in the record, both supporting and against the finding, to decide whether the finding should be set aside. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In reviewing McQuigg's factual sufficiency challenge, we will set aside the judgment only if the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

The district court found that McQuigg was due $150,000 for her contributions to the Junction Property. At trial, McQuigg testified that she had "put into this partnership" a total of $227,383.60. However, Carr testified that this amount included monies contributed to other

8

properties previously owned and sold by the partnership. Documents admitted into evidence listing McQuigg's payments provide dates, amounts, and payees for the separate payments, but generally provide no information as to how they were used and whether the amounts had been recovered. McQuigg argues that she is entitled to recover all her contributions to the partnership, but Carr testified that under the partnership agreement, McQuigg and Carr would own the property in equal shares and McQuigg's financial contributions would generally be offset by his contributions of construction and rental management. It is within the purview of the trial court to make credibility determinations regarding conflicting evidence and testimony. *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 810 (Tex. App.—Austin 2004, pet. denied). As the fact-finder, the district court had the discretion not to accept all of McQuigg's evidence of her contributions and her entitlement to repayment as true. *See Garner v. Garner*, 200 S.W.3d 303, 308 (Tex. App.—Dallas 2006, no pet.). We will not disturb a trial court's resolution of evidentiary conflicts that turn on credibility determinations or the weight of the evidence. *Navasota Res., Ltd. v. Heep Petroleum, Inc.*, 212 S.W.3d 463, 468 (Tex. App.—Austin 2006, no pet.). Given Carr's testimony controverting McQuigg's evidence, we will not disturb the district court's acceptance of some, but not all, of McQuigg's evidence of contributions requiring reimbursement from the sale proceeds.

McQuigg also challenges the district court's finding that the Junction Property had a fair market value of $600,000. According to the receiver's report of sale, "it is the opinion of the Receiver that the fair market value of the property is $450,000, and that the sale reported herein was made for the maximum price currently obtainable for the property." McQuigg contends that there was insufficient evidence to depart from this amount. However, as McQuigg concedes, there was

9

also evidence of other valuations. Particularly, McQuigg entered into evidence a December 15, 2005 appraisal of the Junction Property by Randy D. Posey at the amount of $320,000, and Carr entered into evidence an April 19, 2005 appraisal of the property by Donald W. Graham at the amount of $600,000. At the February 2008 trial, Carr testified that he believed the property was still worth close to $600,000, and Graham testified by affidavit that as of January 2008, the property had a current fair market value of "at least $600,000." We conclude there was legally and factually sufficient evidence to support the district court's findings both that McQuigg was due $150,000 for her contributions to the partnership and that the Junction Property had a fair market value of $600,000. *See City of Keller*, 168 S.W.3d at 810 (legal sufficiency standard); *Dow Chem. Co.*, 46 S.W.3d at 242 (factual sufficiency standard).

Finally, McQuigg contends that even if we take as true the district court's findings that McQuigg was due $150,000 for her contributions to the Junction Property and that she had received property value of $150,000 over her purchase price, such amounts do not offset. We disagree. The partnership owed McQuigg $150,000 for her previous contributions, but McQuigg owed the partnership $150,000 as a result of her purchase price being below fair market value.[3] At oral argument, McQuigg argued that while her half portion of the sale proceeds was reduced by $75,000 due to the sale being below fair market value, her portion should have been increased by

---

[3] The conclusion that McQuigg owed the partnership $150,000 can be reached in two independent ways in accordance with the relevant evidence. Considering that McQuigg purchased the property for $450,000 when it had a fair market value of $600,000, McQuigg received a $150,000 discount that should have gone to the partnership as sale proceeds. Alternatively, even if McQuigg had not been the purchaser, her actions on the property would have given the partnership a loss of $150,000 in sale proceeds. According to its findings and conclusions, the district court used the former approach.

10

a full $150,000 for her unreimbursed contributions, resulting in a total distribution of $75,000 more than she actually received from the court. However, this argument is based on the incorrect assertion that as a result of McQuigg's total contributions of $150,000, Carr owed McQuigg $150,000. Carr did not owe McQuigg $150,000. The partnership owed McQuigg $150,000. Thus, her half portion should have been increased by only $75,000, which offsets the $75,000 by which it had been reduced.[4] The district court's calculation was correct.

The district court's adjustment of McQuigg's unreimbursed contributions to the partnership based on her purchase of the Junction Property from the partnership at below fair market value was within the equitable power of the district court and was supported by legally and factually sufficient evidence. We affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   October 2, 2009

_____

[4] To illustrate, if the only applicable adjustment to the 50% division of proceeds had been payment to McQuigg for her unreimbursed contributions of $150,000, she should have received $282,332.33 (half the proceeds plus $75,000), leaving Carr with $132,332.34. As should be expected, in this scenario McQuigg receives $150,000 more than Carr. Under McQuigg's approach, however, she would have received $357,332.33 (half the proceeds plus $150,000), leaving Carr with only $57,332.34.

11