## TURNER v. ROBERTSON et ux. (No. 9263.)

(Court of Civil Appeals of Texas. Ft. Worth. April 17, 1920.)

**1. Trial ⚖═250—Charge on incapacity of plaintiff not raised by pleading or evidence erroneous.**

Where plaintiffs, husband and wife, seeking cancellation of their oil and gas lease, did not present issue of want of mental capacity of husband as independent ground for cancellation, while evidence was insufficient to raise such issue, trial court erred in charging that, if plaintiff husband was mentally incapable, the contract was void from the beginning, and the jury should find for plaintiffs.

**2. Contracts ⚖═318—Forfeitures of contracts not favored.**

Forfeitures of executed contracts are not favored in law.

**3. Contracts ⚖═92—Wills ⚖═31—Mental capacity for making will and contract same.**

The mental capacity required in disposing of an estate by will and in disposing of it by contract is the same.

**4. Cancellation of instruments ⚖═43—Weakened condition of plaintiff admissible on issue of duress.**

In suit by husband and wife to cancel their oil and gas lease, testimony tending to show a weakened bodily and mental capacity on the part of the husband when he signed the lease was relevant on the issue of any duress on the part of the other party procuring execution; that being the issue.

**5. Mines and minerals ⚖═58—Statement of lessee's agent not "duress" on lessors authorizing cancellation of lease.**

Statement of agent procuring oil and gas lease that refusal to sign would bring about a lawsuit *held* not unlawful or amounting to "duress," within the meaning of the law to authorize the lessors to have cancellation of the lease; it not appearing the assertion was not made in good faith (citing Words and Phrases, "Duress").

**6. Trial ⚖═251(4)—Court did not err in refusing to submit to jury issue not raised by pleading.**

Where defendant oil and gas lessee in the lessors' suit for cancellation did not allege as a basis of his right letters forming a correspondence between him and a lessor, which preceded execution of the lease, the trial court did not err in refusing to declare the legal effect of such correspondence, and to submit the issue to the jury.

**7. Appeal and error ⚖═882(14)—Error in submitting issue invited.**

Where defendant required a special charge on the subject of his fraud in procuring execution of oil and gas lease sought to be canceled, any error of the court in submitting such issue at plaintiff lessors' instance was invited, and not available to defendant on his appeal.

---

⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Throckmorton County; W. R. Chapman, Judge.

Suit by J. F. Robertson and wife against C. A. Turner. From judgment for plaintiffs, defendant appeals. Reversed, and cause remanded.

T. J. Wright, of Throckmorton, for appellant.

J. T. Daniel, of Stephensville, and McLean, Scott & McLean, of Ft. Worth, for appellees.

CONNER, C. J. The appellees, J. F. Robertson and wife, instituted this suit to cancel an oil and mineral lease executed and delivered by them to the appellant, C. A. Turner, upon a tract of land owned by appellees in Throckmorton county. The effort to cancel the lease is based upon a petition which appellant insists is insufficient as against a general demurrer. We will not, however, set out the petition for the purpose of testing its sufficiency, for the reason that we have concluded that the judgment must be reversed and the cause remanded, which will enable the plaintiffs to amend their petition, if they deem it necessary; and because we further think that our disposition of the assignment, upon which the reversal is based, will sufficiently indicate wherein the petition is subject to criticism. It may be said, however, in a general way, that the action to cancel the lease is based upon alleged fraud, duress (on the part of one Miles Hughes, appellant's agent who secured the lease), and because of mental incapacity on the part of appellee J. F. Robertson.

Among other charges to the jury, the court gave the following, to which error is assigned, viz.:

"If you believe by a preponderance of the testimony that at the time the plaintiffs signed the oil and gas contract mentioned in plaintiffs' petition that the plaintiff J. F. Robertson was mentally incapable of entering into said contract, as mental incapacity is hereinbefore defined to you in paragraph 4, hereof, then the contract would be void from the beginning, and in that event you should find in favor of the plaintiffs."

[1] We think it quite clear that the court erred in giving this charge, both for the reason that the plaintiffs in their petition did not present the issue of a want of mental capacity on the part of J. F. Robertson as an independent ground authorizing the cancellation of the lease, and because the evidence is insufficient to raise that issue as a distinct ground for recovery. The plaintiff alleged, in substance, that the said Hughes falsely represented that the land in the vicinity of the plaintiffs' land was leasing for from $1 to $2 per acre, and that that was all plaintiffs' land was worth, the latter price being that which was paid for the lease,

whereas it was in fact worth $20 per acre; and further alleged that the appellee J. F. Robertson "had been sick about three weeks, and his mind was impaired from the effect of such sickness, and said plaintiff was not in a condition to transact any business at that time." It was further alleged that said agent Hughes threatened that, unless plaintiffs did sign the lease, they would be sued, and that they signed it because of such fear of a lawsuit. It was not alleged, however, that the plaintiff J. F. Robertson or his wife failed to understand the nature of the lease or its contents; nor is it alleged, at least in direct terms, that the plaintiffs relied upon the representations of Hughes; and the proof, so far as is shown by this record, is all to the effect that the leasehold value of the land at the time would not exceed $2 per acre.

[2] Forfeitures of executed contracts are not favored in law. In 13 Corpus Juris, page 795, § 1025, it is said:

"Where the defense is mental incapacity to make a contract, it is proper to charge that it does not require a high degree of mental power to make a binding agreement; that one who has enough of mind and reason clearly and fully to understand the nature and consequences of his act in making a contract is to be considered competent to make a binding contract, but one who lacks that capacity is to be considered incompetent."

In 14 R. C. L., page 583, sec. 39, that authority says:

"As to the test of mental capacity to make a contract, there is now no question but that mere weakness of mind in a contracting party is not sufficient to constitute insanity so as to make the contract voidable. Weakness of understanding is not of itself any objection to the validity of the contract, if the capacity remains to see things in their true relations, and to form correct conclusions, although it may furnish ground of suspicion of improper influence. The question in all cases is not whether a person's mind is impaired, nor whether he is afflicted by any form of insanity, but whether the power of his mind have been so affected by his disease as to render him incapable of transacting business like that in question. One may make a contract who has ability to understand the nature of the act in which he is engaged, and its scope and effect, or its nature and consequences."

[3, 4] We will not quote the testimony relating to the mental condition of J. F. Robertson, but it has been carefully read and duly considered, and we think it merely shows that for several weeks prior to the time he and his wife executed the lease, Mr. Robertson had been sick with the "flu," as stated by witnesses, and that therefrom he was in a weakened condition, bodily and mentally. But the proof further shows that both plaintiffs manifested a consideration of and a hesitation about executing the lease,

that clearly indicates their understanding of its nature, and wholly fails to. show such a want of mental capacity on the part of Mr. Robertson as to render his act of no effect on the sole ground that he was mentally incapable. We feel sure that, had the question arisen in a proceeding to determine whether J. F. Robertson was insane, or whether his will should be probated, no court, on the testimony presented in this record, would sustain a verdict to the effect that J. F. Robertson was insane or mentally incapable of disposing of his property by will; and the mental capacity required in disposing of an estate by contract and in disposing of the same estate by will is the same. We do not want to be understood, however, as ruling that the testimony tending to show a weakened bodily and mental condition on the part of J. F. Robertson was incompetent; on the contrary, it is relevant, and could be looked to in determining the effect, if any, of any threat, if any, or any act of duress, if any, on the part of Hughes, of such a character as in law would be sufficient to override the free will of Robertson, and thus induce him to perform an act he would not have otherwise performed.

The sufficiency of the evidence, however, to sustain the verdict and judgment below on the issues of fraud and duress was questioned by appellant's motion for a new trial, and here by assignment of error, and we think these assignments are well taken. The only allegation of a fraudulent representation sufficient to form the basis of appellees' recovery is that already quoted, to the effect that the leasehold value of the land in question was not worth more than $2 per acre, when in fact it was worth $20 per acre, but, as already stated, the proof fails to sustain this allegation. On the contrary, the testimony of the only witness who testified on the subject was to the effect that its leasehold value at the time was not to exceed $2 per acre, and this testimony is not disputed by that of any other witness. The only fact alleged that could form the basis of recovery on the ground of duress is that Robertson and wife were threatened with a lawsuit. J. F. Robertson testified on this subject:

"Hughes and Pate [the notary who accompanied Hughes on the occasion in question] both spoke up and said that if we did not sign up the lease it would cause a lawsuit; that Dr. Turner would bring a suit against us unless we signed up the lease for our 200 acres of land in Throckmorton county, Tex. * * * After they told my wife and I that unless we did sign that blank lease which they had with them, Dr. Turner would file a suit against us for not signing it, in order to keep down a lawsuit and to keep from being sued, my wife and I decided that we had better sign that blank lease. * * * The blank lease was signed by witness and wife both in order to avoid a lawsuit that Hughes said would be brought unless the blank lease was signed by witness and wife."

Mrs. Robertson testified on this subject:

"Hughes and Pate both said that if we did not sign the lease they had with them, that they felt pretty sure that there would be a lawsuit about it. * * * When the parties were there I signed the lease just to keep down a lawsuit, and I told them, Pate and Hughes, at the time I signed it, that I did not want to sign it, and that I only did so to keep down a lawsuit, which they both had told me that was coming if I did not sign the lease they had with them. * * * It is a fact that I would not have signed any lease if Hughes and Pate had not said that I must sign the lease if I did not want a lawsuit."

In 13 Corpus Juris, p. 396, § 310, the following definition of duress, based upon numerous cited cases, is given:

"Duress is that degree of constraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or in apprehension to overcome the mind of a person of ordinary firmness. It consists not merely in the act of imprisonment or other hardship to which the party was subjected, but in the state of mind produced by those circumstances, and in which the act sought to be avoided was done. Of course the agreement must have been entered into because of the imprisonment, or of fear of the threatened injury or imprisonment; otherwise there is no duress. Hence duress will not ordinarily invalidate a contract entered into after opportunity for deliberate action. Duress by mere advice, direction, influence, and persuasion is not recognized in law. Nor can a charge of legal duress be based on mere vexation and annoyance, mere pecuniary distress, a threat to injure one's credit, or the refusal to surrender property on which one has a lien."

In Words and Phrases, vol. 3, p. 2272, it is said:

"To constitute duress by threats, they must be such as would naturally excite such a fear, grounded upon the reasonable belief that the person who threatens has at hand the means of carrying his threats into present execution as would overcome the will of a person of ordinary courage. It is not sufficient merely that a party has entered into a contract under the influence of a threat."

In the last-cited work, page 2270, the following is further said:

"'Legal duress' implies that a party has been unlawfully constrained by another to perform an act under circumstances which prevent the exercise of free will. The act of the party compelling the unwilling obedience must be unlawful or wrongful, and there can be no duress of goods in law where the act done or threatened is nothing more than the party has a legal right to do."

[5] As will later appear in the course of this opinion, certain correspondence between the appellant and J. W. Robertson, relating

to the lease, had taken place, and which, is here insisted upon as sufficient evidence of a written lease of the premises in controversy, to authorize and to require a judgment in behalf of appellant, and we know of no valid reason why the statement of Hughes, appellant's agent, that a refusal on appellees' part to sign the lease would bring about a lawsuit, was unlawful or amounts to duress, within the meaning of the law; it not otherwise appearing that the assertion was not made in good faith, or not an inference unreasonably arising from the correspondence referred to, and which it appears from the testimony was discussed between the parties at the time of the execution of the lease. In Wells v. Barnett, 7 Tex. 584, a threat of a lawsuit was alleged and relied upon, and our Supreme Court refused to rule that the trial court erred in refusing to exclude it from the consideration of the jury, but this was on the ground that a threat of a lawsuit "was so intimately connected with the acts and representations relied on to sustain the charge of fraud." Hence, our Supreme Court said that they did not feel prepared to say that the trial court erred in refusing to exclude it. The inference is very plain that the Supreme Court did not regard the threat as of itself a sufficient basis for a charge of duress. In the case of Landa v. Obert, 45 Tex. 539, duress was alleged, and threats of criminal prosecution for embezzlement and of a civil action for money claimed to have been wrongfully and fraudulently withheld were made. After a full discussion, our Supreme Court held to the effect that a threat of criminal prosecution, unaccompanied by circumstances of unnecessary pain, privation, or danger, or for an unlawful purpose, would not amount to duress, and further said:

"And certainly, if the threat of criminal prosecution does not amount to duress, it is unnecessary to say that the mere threat of a civil suit will not do so."

In the case before us, no circumstances appears in evidence sufficient, in our judgment, to support a finding that the threat, if it is to be so termed, on the part of Hughes of a lawsuit, amounts to duress of a character sufficient to overcome the will of a man of ordinary firmness and knowledge of the rights and remedies of a defendant sued in our courts.

[6, 7] What we have said, we think sufficiently indicates our conclusions on the controlling questions presented on this appeal, and we deem it sufficient to dispose of the other questions in a very brief and general way. Appellant in his pleadings did not allege as a basis of his right the letters forming the correspondence between appellant and appellee J. F. Robertson, which pre-ceded the execution of the lease under consideration. The court therefore did not err in refusing to declare the legal effect of such correspondence and submit the issue to the jury. As we have hereinbefore indicated, the letters probably furnished a reason for the threat of a lawsuit on one side, and of a yielding on the other; but, if subject to the construction contended for in behalf of appellant, as to which we do not decide, they were not made the basis of any relief in appellant's pleadings. In other words, appellant did not plead a lease of the land in controversy by letter, but by his pleadings relied alone upon the lease under consideration as the sole basis of his asserted right. The objection to the court's submission of the issue of fraud on the ground that there was no evidence raising the issue cannot be sustained, inasmuch as appellant requested a special charge on the subject, which was given. The error of the court, therefore, if any, was an invited one, and hence not available on appeal.

We conclude the judgment below should be reversed, and the cause remanded.