

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00021-CV

———————————————

ESTATE OF WILLIAM ALVIN MONCRIEF, JR., DECEASED

On Appeal from Probate Court No. 2
Tarrant County, Texas
Trial Court No. 2021-PR004259-2-B

AND

———————————————

No. 02-23-00058-CV

———————————————

ESTATE OF WILLIAM ALVIN MONCRIEF, JR. DECEASED

On Appeal from Probate Court No. 2
Tarrant County, Texas
Trial Court No. 2021-PR004259-2-B

---

Dissenting Opinion on Rehearing by Justice Birdwell

## DISSENTING OPINION ON REHEARING

## I. Introduction

For the reasons set forth in my dissenting opinion in *Moncrief v. Moncrief*, 672 S.W.3d 156, 170–74 (Tex. App.—Fort Worth 2023, pet. filed) (Birdwell, J., dissenting), I dissent. I would affirm the rulings of the statutory probate court in all respects because the mental incapacity of a contracting party is a contract formation defense, not a merits defense, and a question for adjudication by a court, not an issue of arbitrability for an arbitrator. *Sousa v. Goldstein Faucett & Prebeg, LLP*, No. 14-20-00484-CV, 2022 WL 2976820, at *5 (Tex. App.—Houston [14th Dist.] July 28, 2022, no pet.) (mem. op.) ("The supreme court has concluded that the issue of mental incapacity is for the court to decide rather than the arbitrator, because it is a formation defense calling into question the very existence of a contract." (citing *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 189–90 (Tex. 2009) (orig. proceeding)); *Sanders v. Sanders*, No. 02-08-00201-CV, 2010 WL 4056196, at *1 (Tex. App.—Fort Worth Oct. 14, 2010, no pet.) (mem. op.) ("Mental incapacity is a common law contract formation defense."). Moreover, as I observed in *Moncrief*, the testamentary capacity of the decedent, William Alvin "Tex" Moncrief, Jr., was the subject of litigation in the probate courts and no party has yet argued that "his testamentary capacity is meaningfully different from his capacity to contract during the same time frame." *Moncrief*, 672 S.W.3d at 174 n.6. Because the majority's arbitrability holding deprives the statutory probate court of its exclusive jurisdiction to probate the last will and testament of the decedent—and

thereby to adjudicate whether he lacked testamentary capacity or, alternatively, was subject to undue influence at the time of its execution—I would additionally hold that, as a matter of law, the questions of testamentary capacity and undue influence cannot be the subject of arbitration but must always be determined by a court with probate jurisdiction.

## II. Additional Background

Tex died on December 29, 2021. The very next day, Appellants Richard W. "Dick" Moncrief and Marshall M. Searcy filed an Application to Probate Will and for Issuance of Letters Testamentary in Probate Court No. 1 of Tarrant County seeking an order from that court (1) admitting to probate a written will they asserted had been executed by Tex on March 30, 2021 ("the 2021 Will"), (2) naming them as independent co-executors, and (3) issuing letters testamentary to them.

On January 24, 2022, the probate proceeding having been transferred to Probate Court No. 2 of Tarrant County in the interim, Appellee Gloria Marie Moncrief filed an Original Petition to Contest Purported Will, contesting the validity of the 2021 Will on the grounds of testamentary incapacity and undue influence and opposing the issuance of letters testamentary to Dick and Marshall. In so filing, Gloria asserted that as a statutory probate court, Probate Court No. 2 of Tarrant County possessed exclusive jurisdiction to adjudicate the will contest, citing Section 32.005 of the Texas Estates Code. On the same day, Gloria filed a Cross-Application to Probate Will and Codicils and for Issuance of Letters Testamentary seeking an order (1) admitting to probate a

4

written will she asserted had been executed by Tex on September 30, 2010 ("the 2010 Will"), including four codicils he executed amending the 2010 Will, dated July 18, 2017 ("the First Codicil"), December 26, 2018 ("the Second Codicil"), June 19, 2019 ("the Third Codicil"), and April 30, 2020 ("the Fourth Codicil"), and (2) issuing of letters testamentary to her.

On March 30, 2022, Dick and Marshall filed their First Amended Application to Probate Will, First Amended Original Answer to Gloria Moncrief's Petition to Contest Will of William A. "Tex" Moncrief, Jr., and Original Answer to Gloria Moncrief's Application to Probate Revoked Will, again seeking an order probating the 2021 Will and letters testamentary. Significantly, although they generally denied the allegations of Gloria's application to probate the 2010 Will and the four codicils, Dick and Marshall now sought, in the alternative, an order probating the 2010 Will, as amended by a handwritten codicil executed by Tex on October 6, 2020 ("the Holographic Codicil"), and another codicil executed by Tex on October 26, 2020 ("the Sixth Codicil"), both of which named Dick and Marshall as co-executors of the estate. Finally, they also challenged Gloria's standing as a contestant—specifically alleging that she and other members of her family engaged in business dealings with Tex between his execution of the Fourth Codicil and the Holographic Codicil without ever asserting Tex lacked the mental capacity to conduct such business dealings—and thereby sought dismissal of her contest. By way of amended pleadings, Gloria subsequently added Appellants Gary

5

R. Allen and Tom Oil Moncreif as contestants and co-applicants seeking an order probating the 2010 Will and the four codicils and issuing letters testamentary to them.

### III. Probating a Will is an Exclusively Judicial Function

"The probate of an instrument as a will is a judicial process by which a court of competent jurisdiction in a duly constituted proceeding tests the validity of the instrument before it and ascertains whether or not it is the last will of the deceased." 74 Tex. Jur. 3d *Wills* § 340 (2024). As our sister court in Austin once observed:

> An application to probate a will is not in any proper sense a pleading founded in whole or in part upon an instrument in writing. The proceeding is one *in rem*, the very purpose of which is to establish the genuineness, the validity, and the execution under the essential formalities of law of the instrument as the last will and testament of the testator.

*Hogan v. Stoepler*, 82 S.W.2d 1000, 1001 (Tex. App.—Austin 1935, no writ); *see Orr v. O'Brien*, 55 Tex. 149, 156 (1881) ("[A]n application for the probate of a will is a proceeding *in rem*, and the judgment of the court upon it is binding upon all the world, until revoked or set aside." (quoting *Steele v. Renn*, 50 Tex. 467, 481–82 (1878))); *Jones v. Jones*, 301 S.W.2d 310, 317 (Tex. App.—Texarkana 1957, writ ref'd n.r.e.) ("'Probate' is the actual proving that an instrument purporting to be a will was signed by the testator in the form and manner required by law and the doing of all things of which probate courts have jurisdiction."); *Ross' Estate v. Abrams*, 239 S.W. 705, 707 (Tex. App.—San Antonio 1922) ("'Probate' is 'the act or process of proving a will,' and it must be preceded by the presentation of the will to the court, which is done by filing an application that they will be admitted to probate with the clerk of the county court of

the proper county."), *aff'd*, 250 S.W. 1019 (Tex. Comm'n App. 1923), *disapproved on other grounds by Ferreira v. Butler*, 575 S.W.3d 331, 338 & n.55 (Tex. 2019); *see also Admission to Probate*, Ballentine's Law Dictionary 36 (3d ed. 1969) ("A judicial determination in the form of a judgment of the court or a formal order declaring that an instrument propounded for probate is the will of the decedent who executed it."); *Probate*, Black's Law Dictionary 1395 (10th ed. 2014) ("The judicial procedure by which a testamentary document is established to be a valid will; the proving of the will to the satisfaction of the court."); *Probate*, Cochran's Law Lexicon 247 (4th ed. 1956) ("[T]he proof before an officer authorized by law that an instrument, offered as the last will and testament of a deceased person, is his last will and testament. When proved to the satisfaction of the officer, it is received, filed and recorded, and is then said to be admitted to probate.").

A will is "duly probated" in Texas only when "legally" and "finally" admitted to probate by a court with probate jurisdiction. *See Jones*, 301 S.W.2d at 317; *see also Clark v. Barr*, 239 S.W.2d 114, 115 (Tex. App.—Fort Worth 1951, no writ) ("The order of a probate court admitting a will to probate is a judgment in every essential sense, and if there appears upon the face of the record the elements of validity it is immune from collateral attack as any other judgment." (quoting 44 Tex. Jur. 783)). Until such time, a will is of no legal effect. *Taylor v. Martin's Estate*, 3 S.W.2d 408, 410 (Tex. 1928) ("It is a condition precedent to the will's ever having any legal effect that is be probated in accordance with the statutes."); *Taysum v. El Paso Nat'l Bank*, 256 S.W.2d 172, 175 (Tex.

App.—El Paso 1952, writ ref'd) ("In case of testamentary trust, before the will has legal effect it must of course be admitted to probate.").

In *Franks v. Chapman*, the supreme court confirmed that, historically, the issues presented by the application of a will to be admitted to probate on the one hand, and a contest filed to challenge a will's validity on the other, were identical, and were identically to be adjudicated within the exclusive jurisdiction of the probate courts:

> A proceeding to contest the validity, as a will, of a paper which has been admitted to probate as such, is no less a probate proceeding than is one instituted to have a paper probated as a will. The inquiry in each case is the same; the subject matter is the same, and the jurisdictional power exercised in declaring a paper already probated to be invalid as a will is co-extensive with that exercised in refusing to declare by the act of probate that the paper offered is the valid will of the deceased. The actors in the one case assume the burden of establishing a proposition negative in its character, while in the other they assume the burden of an affirmative. This is practically all the difference in the two procedures. *They alike involve the exercise of general jurisdiction of a probate court in one of its most common and essential applications. This is conferred alone on the county courts, and the legislature has no power to confer it by implication or by express terms on any other court.*

61 Tex. 576, 579–80 (1884) (emphasis added); *see also Timmins v. Bonner & Long*, 58 Tex. 554, 556–58 (1883) (quoting Tex. Const. of 1876, art. V, § 16, as granting county courts "the general jurisdiction of a probate court" to "probate wills" and characterizing such jurisdiction as "exclusive" and not subject to diminishment by the legislature); *Elliott v. Elliott*, 208 S.W.2d 709, 711–12 (Tex. App.—Fort Worth 1948, writ ref'd n.r.e.) ("When invoked in a proper manner, this jurisdiction of the county court becomes exclusive, and, unless facts exist which would make its exercise unauthorized under the statute, no other court can assume jurisdiction to make the settlement, partition and distribution

of estates of deceased persons until the time in which [the] proceeding could be brought in the county court has expired, or, if an administration has been begun in the county court, until the administration is closed." (quoting *Buchner v. Wait*, 137 S.W. 383, 388 (Tex. App.—Galveston 1911, writ ref'd))).

Today, the jurisdiction to admit a will to probate or to hear a contest of a will is set by statute. "All probate proceedings must be filed and heard in a court exercising original probate jurisdiction." Tex. Est. Code Ann. § 32.001(a). "A 'probate proceeding' includes 'a matter or proceeding relating to a decedent's estate;' 'the probate of a will, with or without administration of the estate;' and 'an application, petition, or action regarding the probate of a will or an estate administration.'" *In re Est. of Stegall*, No. 02-17-00410-CV, 2019 WL 6205244, at *8 (Tex. App.—Fort Worth Nov. 21, 2019, no pet.) (mem. op.) (quoting Tex. Est. Code Ann. §§ 22.029, 31.001(1), (4)).

"In a county in which there is a statutory probate court, the statutory probate court has *exclusive* jurisdiction over all probate proceedings, regardless of whether contested or unconstested." Tex. Est. Code Ann. § 32.005(a) (emphasis added); *see* Tex. Gov't Code Ann. § 25.0003(e) ("In a county that has a statutory probate court, a statutory probate court is the only county court created by statute with probate jurisdiction."); *see also In re CenterPoint Energy Hous. Elec. LLC*, 629 S.W.3d 149, 155 (Tex. 2021) (orig. proceeding) (plurality op.) ("A statutory probate court has jurisdiction only as provided by statute." (first citing Tex. Const. art. V, § 1; and then citing *Mobil Oil Corp. v. Shores*, 128 S.W.3d 718, 723 (Tex. App.—Fort Worth 2004, no pet.))); *Mobil Oil*

*Corp.*, 128 S.W.3d at 723 ("A statutory probate court may exercise only that jurisdiction accorded it by statute."). "Probate Court Number Two of Tarrant County is one of two statutory probate courts in that county." *In re Est. of Poff*, No. 01-19-00266-CV, 2020 WL 3422210, at *1 n.4 (Tex. App.—Houston [1st Dist.] June 23, 2020, no pet.) (mem. op.); *see* Tex. Gov't Code Ann. § 25.2221(c)(2); *see also Kirkland v. Kirkland*, No. 02-22-00469-CV, 2023 WL 3643642, at *14 (Tex. App.—Fort Worth May 25, 2023, no pet) (mem. op.) (quoting Section 25.2221(c) as establishing two statutory probate courts for Tarrant County); *Stegall*, 2019 WL 6205244, at *5 n.6 (citing Section 25.2221(c) and observing that Tarrant County's two probate courts are statutory probate courts). Accordingly, Probate Court No. 2 has exclusive jurisdiction to admit the will of a testator to probate as well as to hear any contest to its validity.

Falling squarely within this exclusive jurisdiction is the adjudication of the issues of testamentary capacity and undue influence:

> Whether an instrument should be admitted to probate as an unrevoked last will is the matter for determination in an application for probate of a will. That decision is made by determining "whether it had been revoked, whether it was executed in the manner and conditions required by law, *and whether the maker had testamentary capacity and was not under undue influence (if raised) when it was executed*."

*Tips v. Yancey*, 431 S.W.2d 763, 764 (Tex. 1968) (emphasis added) (quoting *Huston v. Cole*, 162 S.W.2d 404, 406 (Tex. 1942)); *see also Burton v. Conn. Gen. Life Ins. Co.*, 72 S.W.2d 318, 322 (Tex. App.—Fort Worth 1934, writ ref'd) ("The functions of a probate court when a will is propounded for probate are limited to inquiring and determining whether

or not the instrument presented to it as the last will of the decedent was executed by him in the manner prescribed by statute, and when he was legally competent to execute it, and free from duress, menace, fraud and undue influence." (quoting 28 Ruling Case Law 377, § 379 (1921))); *Pullen v. Russ*, 209 S.W.2d 630, 633 (Tex. App.—Amarillo 1948, writ ref'd n.r.e.) (same). "Unless set aside, the probate of a will is conclusive on the parties . . . (and others who had notice [thereof]) on all questions of testamentary capacity, the absence of fraud or undue influence, and due execution of the will." *Probate*, Black's Law Dictionary 1395 (10th ed. 2014).

"A person must be of sound mind to execute a valid will." *In re Est. of Luce*, No. 02-17-00097-CV, 2018 WL 5993577, at *8 (Tex. App.—Fort Worth Nov. 15, 2018, no pet.) (mem. op.) (citing Tex. Est. Code Ann. § 251.001). The phrase "of sound mind" means "having testamentary capacity" when considering whether to admit a will to probate. *See id.*; *Nass v. Nass*, 224 S.W.2d 280, 283 (Tex. App.—Galveston 1949) (holding definitions of "sound mind" and "testamentary capacity" to be the same), *aff'd on other grounds*, 228 S.W.2d 130 (Tex. 1950); *Norton v. Houston*, 235 S.W. 963, 967 (Tex. App.—Fort Worth 1921, no writ) ("The term 'unsound mind' is a legal term."). "Testamentary capacity requires that the testator, at the time the will is executed, have sufficient mental ability to understand he is making a will, the effect of making the will, and the general nature and extent of his property." *Luce*, 2018 WL 5993577, at *8 (first citing *Horton v. Horton*, 965 S.W.2d 78, 85 (Tex. App.—Fort Worth 1998, no pet); and then citing *Tieken v. Midwestern State Univ.*, 912 S.W.2d 878, 882 (Tex. App.—Fort Worth

11

1995, no writ)). "He must also know his next of kin and the natural objects of his bounty, the claims upon them, and have sufficient memory to collect in his mind the elements of the business transacted and hold them long enough to perceive their obvious relation to each other and form a reasonable judgment about them." *Id.*; *see also Lindley v. Lindley*, 384 S.W.2d 676, 678 n.2, 681 n.3 (Tex. 1964) (approving proposed jury instruction employing substantially same definition); *Prather v. McClelland*, 13 S.W. 543, 547 (Tex. 1890) (holding virtually identical definition employed in charge "substantially correct").

Critically, testamentary capacity and mental capacity to contract are not synonymous for purposes of adjudication. *See In re Est. of Klutts*, No. 02-18-00356-CV, 2019 WL 6904550, at *11 (Tex. App.—Fort Worth Dec. 19, 2019) (mem. op.) (Wallach, J., concurring and dissenting in part) ("[I]t is worth noting that it takes less mental capacity to establish testamentary capacity than legal capacity to make contracts."), *withdrawn pursuant to settlement*, No. 02-18-00356-CV, 2020 WL 1646581 (Tex. App.— Fort Worth Apr. 2, 2020, no pet.) (mem. op.). Although its source is a bit unclear, Texas courts follow the rule that "less mental capacity is required to enable a testator to make a will than for the same person to make a contract."[1] *Hamill v. Brashear*, 513 S.W.2d 602,

---

[1] In *Prather v. McClelland,* the supreme court approved as "substantially correct" the following jury instruction given by the trial court concerning the distinction between testamentary and contract capacity:

Ordinarily, less capacity is required to enable a testator to make a will than for the same person to make a contract or to engage in a struggle with

12

another person, in which each is bargaining to secure the best terms, or to engage in intricate and complex business matters[.]

13 S.W. at 585.

Without citation to *Prather*, in *Brown v. Mitchell*, the supreme court subsequently held that a trial court's refusal to give the following similar jury instruction was not error:

> The jury are further instructed that the law does not require the same amount of mental capacity to make a valid will as to make an ordinary contract. The only capacity the law requires is that the testatrix shall, at the time of making or executing the will, know or understand what she is about, and to whom she is bequeathing or devising her property.

31 S.W. 621, 622 (Tex. 1895). In so holding, the court reasoned,

> There was no reason to inform the jury that the law required a less amount of capacity to make a will than an ordinary contract. The jury would not be presumed to know what degree of capacity the law required to make a contract, and therefore could not make any proper comparison between the capacity of the testatrix, as shown by the evidence, and that which the law would require to enable her to make a binding contract.

*Id.* at 623; *see also Earl v. Mundy*, 227 S.W. 716, 719 (Tex. App.—El Paso 1921, writ ref'd) (observing that, although *Brown* and *Prather* are "not altogether in harmony," neither considered the additional testamentary versus contract capacity instruction to impermissibly comment on the weight of the evidence).

In 1960, West Publishing Company published Volume 38 of the Texas Digest listing the following headnote—virtually identical to the instruction approved in *Prather*—under *Wills*, 409k31 for the supreme court's decision in *Vance v. Upson*, 1 S.W. 179 (Tex. 1886):

> Ordinarily, less capacity is requisite to enable a testator to make a will than for the same person to make a contract or to engage in a struggle with another person, in which each is bargaining to secure the best terms, or to engage in intricate and complex business matters.

38 Tex. Digest *Wills* 409k31 (1960). Headnote 8 now appears in the online Westlaw version of *Vance*, but did not appear when West originally published the decision in

13

607 (Tex. App.—Amarillo 1974, writ ref'd n.r.e.); *Smith v. Welch*, 285 S.W.2d 823, 828 (Tex. App.—Texarkana 1955, writ ref'd n.r.e.); *In re Good's Est.*, 274 S.W.2d 900, 902 (Tex. App.—El Paso 1955, writ ref'd n.r.e.); *Venner v. Layton*, 244 S.W.2d 852, 856 (Tex. App.—Dallas 1951, writ ref'd n.r.e.) ("In determining the question [of testamentary capacity], the test in ordinary contract cases is not followed for the reason that on an application to probate a will the maker is dead."); *Cole v. Waite*, 242 S.W.2d 936, 938 (Tex. App.—Amarillo 1951), *aff'd*, 246 S.W.2d 849 (Tex. 1952); *Garcia v. Galindo*, 199 S.W.2d 488, 496 (Tex. App.—San Antonio 1946), *rev'd on other grounds*, 199 S.W.2d 499 (Tex. 1947); *Rudersdorf v. Bowers*, 112 S.W.2d 784, 789 (Tex. App.—Galveston 1937, writ dism'd); *Payne v. Chance*, 4 S.W.2d 328, 329 (Tex. App.—Amarillo 1928, no writ). *But cf. In re Est. of Minton*, No. 13-12-00026-CV, 2014 WL 354527, at *6 (Tex. App.—Corpus Christi–Edinburg Jan. 30, 2014, pet. denied) (mem. op.) ("The legal standards for determining the existence of mental capacity for the purposes of executing a will or deed are substantially the same as the mental capacity for executing a contract." (quoting *Bach v. Hudson*, 596 S.W.2d 673, 675 (Tex. App.—Corpus Christi–Edinburg 1980, no writ))); *Turner v. Robertson*, 224 S.W. 252, 254 (Tex. App.—Fort

---

1886. 1 S.W. at 179. Nor does the language of the headnote appear within the text of the opinion itself. *Id.* at 179–84. Finally, a Westlaw search of both the state and federal databases using key terms from the instruction approved in *Prather* revealed not a single decision as possible authority therefor.

Worth 1920, no writ) ("[T]he mental capacity required in disposing of an estate by contract and in disposing of the same estate by will is the same.").

Although the rule sets forth a lesser burden for proving testamentary capacity than for contract capacity, in *Norton v. Houston*, we summarized the interrelated, but distinct burdens in the following manner:

> One capable of transacting ordinary business is presumed capable of making a will, although not entirely of sound mind; and one totally incapable of transacting ordinary business is ordinarily incapable of making a will, although one may have testamentary capacity, even though incapable of transacting ordinary business, or making a valid deed or contract.

235 S.W. at 966 (quoting 40 Cyclopedia of Law and Procedure 1004 (1910)). When called to consider a testator's testamentary capacity to execute a will in light of his mental capacity to enter into a related contract, deed or written instrument, including one that includes an arbitration clause, a probating court should be mindful of these distinctions. *See id.* at 967 (holding the failure of the trial court to give a proper instruction to the jury concerning the "degree of unsoundness of mind" necessary to invalidate the testatrix's will was fundamental error requiring reversal even in the absence of an objection or tender of a proper instruction); *Rudersdorf*, 112 S.W.2d at 789 (observing that testimony from three witnesses that testator "was perfectly capable of handling his own business, and they either made contracts with him, or sought to make contracts with him, or assisted in connection with contracts that he did make" did not support their opinions that he was not of sound mind in making his will).

On the other hand, undue influence is a separate and distinct question from testamentary capacity when probating a will:

> The law recognizes undue influence in the procurement of a will as a distinct ground for its avoidance. In its essential elements it has no real relation to the ground of mental incapacity. Testamentary incapacity implies the want of intelligent mental power, while undue influence bespeaks in itself the existence of a mind of strength sufficient to make a valid will if unhindered by the dominant influence, and such a mind as would have produced a valid will but for the coercion or restraint to which it was subjected. The issue is proved only when free agency is shown to have been supplanted, which means a testament made under such subjection or surrender of the natural freedom of will and action as that it speaks the mind of another. It is not necessary that the mind be reduced to a state of incapacity, for the invalidity of the will may then be established upon that ground alone. It is sufficient, though the mind be capable to the full extent that the law requires for testamentary capacity, if as a result of the exertion of the influence independence of volition be overcome, liberty to act subdued, and freedom of will be therefore subverted.

*Scott v. Townsend*, 166 S.W. 1138, 1143 (Tex. 1914); *see Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963) ("Undue influence in the procurement of a [coterminous] testament is a ground for its avoidance separate and distinct from the ground of testamentary incapacity; for while testamentary incapacity implies the want of intelligent mental power, undue influence implies the existence of testamentary capacity subjected to and controlled by a dominant influence of power."); *In re Est. of Scott*, 601 S.W.3d 77, 92 (Tex. App.—El Paso 2020, no pet.) ("Yet testamentary capacity and undue influence are separate and distinct questions."). And the rules guiding the adjudication of undue influence apply substantially alike to wills, deeds, and other instruments such as trust documents. *See Rankin v. Rankin*, 151 S.W. 527, 529 (Tex. 1912); *Peek v. Mayfield*, No. 02-

16

22-00492-CV, 2023 WL 5967886, at *10 (Tex. App.—Fort Worth Sept. 14, 2023, pet. denied) (mem. op.); *DeGrassi v. DeGrassi*, 533 S.W.2d 81, 85 (Tex. App.—Amarillo 1976, writ ref'd n.r.e.).

## IV. Conclusion

As the probate proceeding currently stands, Dick and Marshall maintain that Tex possessed testamentary capacity and was not subject to undue influence when he executed the 2021 Will, the 2010 Will, the Sixth Codicil, and the Holographic Codicil, while Gloria, Gary and Tom contest the validity of all but the 2010 Will, as amended by the First, Second, Third and Fourth Codicils, all on the basis of testamentary incapacity and undue influence. Accordingly, the issues are squarely framed for the statutory probate court to adjudicate for purposes of determining which will or codicil to admit to probate.

By holding that the issues of mental capacity and undue influence are subject to arbitration in the ancillary trust litigation, however, the majority effectively deprives the statutory probate court of its exclusive jurisdiction to adjudicate the exact same questions for purposes of determining which will and codicil(s) to probate. If Dick and Marshall obtain favorable capacity and influence findings from arbitration, they will no doubt assert the obligation of the statutory probate court to confirm those findings. The same can be expected of Gloria, Gary, and Tom if they prevail in arbitration.

Under what authority can the statutory probate court both confirm the arbitration findings in the trust litigation, then reopen for adjudication the exact same

17

issues in the probate proceeding? As the supreme court once observed, the resolution of these issues by adjudication has always been the purpose of requiring a will to be admitted to probate:

> *The court of probate is instituted to administer vacant estates*; not to benefit counties or their officers by administering estates within them. The power to administer should not be made dependent upon the mere contingencies upon which a preference between counties is regulated, *but upon the existence of property within the state, whose condition, in reference to the rights of parties in relation to it, calls for the application of our probate laws, for its preservation and distribution.*

*Green v. Rugely*, 23 Tex. 539, 550 (1859) (emphasis added). Absent any legislative authority for the arbitration of testamentary capacity and undue influence—and for arbitration findings to bind a statutory probate court for purposes of probating a will—I would hold these fundamental questions not subject to determination by an arbitrator, but solely by the statutory probate court.

/s/ Wade Birdwell
Wade Birdwell
Justice

Delivered: October 10, 2024